UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEPOMED INC., | |
| Plaintiff, | Civil Action No. 13-571 (JAP) |
| v. | MEMORANDUM OPINION |
| PURDUE PHARMA L.P., et al., | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Defendants Purdue Pharma L.P., P.F. Laboratories, Inc. and Purdue Pharmaceuticals L.P.'s (collectively, "Purdue") motion to bifurcate the trial of this matter and to stay all damages and willfulness related discovery.[1] [Docket Entry No. 36]. Plaintiff Depomed, Inc. ("Depomed") opposes Purdue's motion. The Court has fully reviewed and considered all of the arguments made in support of and in opposition to Purdue's motion. The Court considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Purdue's motion is DENIED.

**I.  Background and Procedural History**

On January 29, 2013, Depomed filed the Complaint in this matter alleging that Purdue infringed three of Depomed's patents: U.S. Patent Nos. 6,340,475 (the "'475 patent"), 6,635,280 (the "'280 patent") and 6,723,340 (the "'340 patent") (collectively, the "patents-in-suit"). [Docket Entry No. 1]. Thereafter, on July 23, 2013, Depomed amended its Complaint to add a

---

[1] Purdue's motion was initially filed also on behalf of Defendant Rhodes Technologies ("Rhodes"). The parties, however, have since agreed to the stipulated dismissal of Rhodes from this matter.

fourth patent, U.S. Patent No. 8,329,215 (the "'215 patent") to this lawsuit.[2] [Docket Entry No. 49]. Depomed claims that Purdue's OxyContin®, a controlled-release oxycodone pain relief medication, infringes the patents-in-suit. As such, Depomed seeks a judgment that Purdue has infringed the patents-in-suit, a permanent injunction enjoining Purdue from manufacturing, using, offering to sell or selling OxyContin® until the patents-in-suit expire as well as money damages. On August 9, 2013, Purdue responded to Depomed's Amended Complaint denying infringement, asserting various affirmative defenses, including, but not limited to, noninfringement and invalidity, and asserting counterclaims seeking declarations of noninfringement and invalidity. (*See generally* Purdue's Answer to Amended Complaint and Amended Counterclaims; Docket Entry No. 50). As is clear from the timing of Depomed's Amended Complaint and Purdue's Answer thereto, this case is still in the early stages of proceedings. The parties have only begun to exchange documents; fact discovery is ongoing and, indeed, is far from complete.

### A. Purdue's Arguments

Purdue argues that it would be efficient for the Court to bifurcate the trial of this matter into two phases: liability and damages, with the Court only addressing damages if Depomed is successful in proving liability. Purdue also argues that all discovery related to damages and willfulness should be stayed pending the aforementioned liability determination.

As to bifurcation, Purdue argues that this Court and other Third Circuit courts have found bifurcation "to be not only appropriate, but 'necessary, in all but exceptional patent cases.'" (Purdue Br. at 1 (quoting *Dutch Branch of Streamserve Dev. AB v. Exstream Software,* LLC,

---

[2] Purdue's motion to bifurcate was filed prior to the addition of the '215 patent to this lawsuit. Consequently, Purdue's motion as well as Depomed's response refer to the three patents-in-suit. This Memorandum Opinion also refers to the three patents-in-suit. The Court, however, finds that the addition of the fourth patent, *i.e.*, the '215 patent, does not alter the analysis contained herein.

2

Civ. No. 08-343 (SLR), 2009 U.S. Dist LEXIS 76006, at 2 (D. Del. Aug. 26, 2009); Docket Entry No. 36). Purdue contends that bifurcation is specifically warranted here for the following three reasons: "[f]irst, the liability and damages phases each present complex issues, with distinct factual inquiries and, if not bifurcated, would likely cause significant jury confusion[;]... [s]econd, judicial economy and efficiency will be served if this case is bifurcated[;] . . . [t]hird, Depomed will not be prejudiced if damages are bifurcated." (*Id.* at 1-2 (Emphasis omitted)).

With respect to the complexity of the issues, Purdue claims that the testimony and evidence to be presented regarding both liability and damages will present complex issues that are likely to independently cause significant jury confusion. Indeed, Purdue argues that the liability phase alone "will require the jury to hear extensive evidence on the three asserted patents, the prior art, and Purdue's products, including evidence and testimony concerning biochemistry, pharmaceutical formulations, drug delivery gastric anatomy and physiology, and gastroenterology." (*Id*. at 1). Purdue argues that, from the jury's perspective, said information would be viewed as "highly technical." (*Id*. at 7).

In addition, Purdue notes that the liability phase will also require the jury to immerse themselves "in unfamiliar legal issues concerning patent infringement, as well as anticipation and obviousness from the viewpoint of a hypothetical 'person of ordinary skill in the art.'" (*Id*. at 1). In this regard, Purdue notes that, in order to succeed on liability, Depomed must prove that Purdue infringes "each and every element of the 37 asserted claims." (*Id*. at 7). As a result, Purdue argues that the infringement case standing alone will require "substantial evidence regarding the specific formulation of OxyContin® as compared to the specific elements of the asserted claims in each of the patents-in-suit." (*Id*. at 8). Purdue argues that the complexity of the liability phase is compounded by the fact that infringement is not the only issue to be tried.

3

Instead, a jury will also have to consider Purdue's affirmative defenses and counterclaims regarding the alleged invalidity of the patents-in-suit. Purdue notes that it has asserted defenses including anticipation, obviousness, lack of enablement, indefiniteness and insufficient written description. Purdue argues that each of these defenses "requires separate and distinct legal and factual inquiries[.]" (*Id*.) Purdue claims that given the "scope and complexity" of the liability claims and defenses . . . this case will involve a variety of expert reports from technical experts and significant expert discovery." (*Id*. at 9). Under these circumstances, Purdue argues that bifurcation is necessary to minimize the complexity already inherent in this matter.

Purdue points to several recent patent suits filed by Depomed against other pharmaceutical companies that involve the same patents-in-suit to demonstrate the complexity of this case. Purdue argues that "[i]n those cases, voluminous documents were produced, many fact depositions were taken, multiple expert reports were served on issues related to liability, and multiple expert depositions were taken, all related to liability issues." (*Id*.) As such, Purdue claims that it is clear that "litigation regarding the three patents-in-suit is complex." (*Id.*) Purdue maintains that the liability issues here will be every bit as complex as those presented in the aforementioned cases, most of which represent Hatch-Waxman cases involving ANDA products that haven't been approved by the FDA or sold in the marketplace, if not more complex as this case involves a jury trial rather than a bench trial. Given the complexity of the issues inherent in the liability portion of this case, Purdue argues that bifurcation is warranted.

In addition to the complexity of the liability phase of these proceedings, Purdue contends that the complexity of the damages phase also weighs in favor of bifurcation. In this regard, Purdue claims that Depomed "may seek damages against Purdue . . . under various theories, which may include an assessment of reasonable royalties and other complex economic analyses."

4

(*Id*. at 10). Purdue notes that in determining what would have constituted a reasonable royalty, the jury will have to consider fifteen *Georgia-Pacific* factors. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Purdue claims that explaining each of these fifteen factors "and their relevance to the jury will require detailed analyses and counter-analyses, examination and cross-examination of multiple experts, and additional evidence[,]" hardly a small feet. (Purdue Br. at 11). Given this complexity, Purdue argues that the Court should bifurcate the liability and damages issues. Indeed, Purdue claims that requiring the jury to grapple with both sets of complex issues "at once imposes an 'extraordinary' burden on a jury." (*Id*. (quoting *Dutch Branch*, 2009 U.S. Dist. LEXIS 76006, at *2-3).

Purdue also argues that the fact that the damages issues and evidence do not substantially overlap with the liability issues and evidence in this case also militates in favor of bifurcation. Specifically, Purdue claims that "[l]iability in a patent case focuses on 'the specifics of the invention, the validity of the patent, and the structure and operation of the allegedly infringing product" (*Id*. at 12 (quoting *Avia Group Int'l Inc. v. Nike, Inc.* 22 U.S.P.Q. 2d (BNA) 1475, 1477 (D. Or. 1991)), whereas "the damages case will focus on financial, marketing, and economic evidence necessary for Depomed to meet its burden of proof, such as 'proof of sales, costing factors, profit levels and offsetting costs.'" (*Id*. (quoting *Avia Group*, 22 U.S.P.Q. 2d (BNA) at 1477)). Given the lack of overlap, Purdue argues that there will be "little to no duplication of effort by the parties if the trial is bifurcated." (*Id*.) Furthermore, Purdue claims that any argument that Purdue's obviousness defense will raise overlapping issues with respect to commercial success has been discounted by courts because "'the question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such

5

as is required for proof of damages.'" (*Id*. (quoting *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.* 180 F.R.D. 254, 259 (D.N.J. 1997)).

Turning next to efficiency considerations, Purdue argues that bifurcation will promote efficiency and judicial economy by potentially avoiding a trial on damages without requiring a significant duplication of efforts. In this regard, Purdue again argues that there is no substantial overlap in the evidence and testimony needed to prove liability and damages. Given this lack of overlap, Purdue maintains that the parties and the Court can conserve resources by trying liability first. Indeed, Purdue notes that if Purdue obtains a finding either at summary judgment or trial that the patents-in-suit are invalid and/or there is no infringement, then all damages issues become moot. Purdue also argues that even if the patents-in-suit are found to be valid and the Court or jury determines that Purdue's OxyContin® infringes same, bifurcation would still promote efficiency and judicial economy because "the parties may well be more likely to explore a possible settlement before any trial on damages. (*Id*. at 13). As such, Purdue claims that bifurcation would potentially save the Court and the parties from "investing valuable time and effort to litigate potentially unnecessary issues[.]" (*Id.*) Purdue notes that such savings not only apply to resources saved by avoiding the expenses associated with an actual trial on damages, but also includes resources saved by obviating the need for the Court to address discovery disputes and *Daubert* motion practice related to damages. (*See Id*. at 14). Lastly, Purdue argues that bifurcation promotes efficiency because, in bifurcated cases, parties can appeal liability determinations without waiting for a determination on damages or willfulness.

Finally, Purdue argues that bifurcation is appropriate because it will not prejudice Depomed. In this regard, Purdue claims that the early stage of proceedings combined with the fact that this matter is governed by the Local Patent Rules ensures that there will be little to no

prejudice to Purdue. Specifically, Purdue argues that the Local Patent Rules dictate that claim construction and the parties' exchange of infringement and invalidity contentions precede the completion of fact discovery as well as the initiation of expert discovery. Purdue notes that here fact discovery has only recently started, invalidity contentions have not been exchanged, the parties have not proposed claim constructions and no depositions have taken place or been noticed. Under these circumstances, Purdue argues that Depomed cannot reasonably claim that it would be prejudiced by any delay caused by bifurcation.

In addition to arguing that the trial in this matter should be bifurcated, Purdue also argues that damages discovery should be stayed pending the Court's resolution of the liability phase of this case. Purdue notes that under FED.R.CIV.P. ("Rule") 26(d), the Court has broad discretion over the timing and sequence of discovery. Purdue argues that the Court should exercise its discretion to stay damages discovery "in order to properly effectuate the purposes behind separate trials under Rule 42(b). (Purdue Br. at 14). In this regard, Purdue argues that if the damages trial is bifurcated then there is no reason for the parties "'to expend tremendous efforts and funds to produce volumes of documents [and expert reports] concerning issues of damages." (*Id*. at 15 (quoting *Princeton*, 180 F.R.D. at 261). Indeed, Purdue claims that one of the very purposes of bifurcation under Rule 42(b) is to avoid said costs pending the initial liability determination.

Lastly, Purdue argues that, if raised, the issue of willful infringement should be bifurcated and discovery concerning same should be stayed. As an initial matter, Purdue notes that Depomed has not pled willful infringement; though Purdue acknowledges that Depomed has asserted that this is an "exceptional" case, warranting treble damages. If Depomed raises willful infringement, Purdue argues that this issue, like damages, should be bifurcated and discovery

7

concerning same should be stayed. Purdue argues that bifurcation is appropriate because (1) willfulness is a damages issue; (2) if not bifurcated, Purdue would face the dilemma of a premature waiver of privilege; and (3) trying willfulness with liability would unduly confuse the jury and unfairly prejudice Purdue.

### B. Depomed's Arguments

In contrast, Depomed argues that Purdue has failed to establish that bifurcation is warranted in this matter. In this regard, Depomed claims that bifurcation, even in patent cases, "is the exception, not the rule[.]" (Depomed Opp. Br. at 3; Docket Entry No. 41). Contrary to Purdue's assertion, Depomed argues that the Third Circuit does not routinely bifurcate damages issues in patent cases. Instead, Depomed claims that courts in this District frequently deny bifurcation in patent cases. (*See Id.* (quoting *Graco, Inc. v. PMC Global, Inc.*, Civ. A. No. 08-1304 (FLW), 2009 U.S. Dist. LEXIS 26845, at *125 (D.N.J. Mar. 31, 2009) (citation omitted)). Further, Depomed argues that the very case Purdue substantially relies upon to claim that patent cases in general are well-suited for bifurcation – *Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC,* No. 08-343-SLR, 2009 U.S. Dist. LEXIS 76006, at *2 (D. Del. Aug. 26, 2009) – has been criticized by other courts within the very district it was decided.

Depomed argues that Purdue has failed to meet its burden of establishing that bifurcation of the instant matter is warranted. In this regard, Depomed claims that Purdue's "conclusory and unsupportable statements about the complexity of this case, the efficiency of bifurcation and the lack of prejudice to Depomed" fall woefully short of the showing Purdue must make. (*Id.* at 6). As to the complexity of this matter, Depomed claims that "this case is no more complex than any typical patent case." (*Id.*) Indeed, Depomed notes that its infringement claim involves only a single product and three patents that contain near identical specifications. Further, Depomed

8

argues that while Purdue highlights that Depomed is asserting infringement of 37 claims, Depomed is only "asserting infringement of five independent claims from the patents-in-suit." (*Id*. at 7). Depomed contends that these facts do not render this particular patent case extraordinarily complex.

In addition, Depomed takes issue with Purdue's focus on the "highly technical" nature of this case in an attempt to show that the alleged complexity of this case militates in favor of bifurcation. Depomed notes that nearly every patent case involves "highly technical" subject matter and, as such, nearly ever patent case requires testimony from infringement, validity and damages experts. Depomed claims that the fact that this case will involve such expert testimony does not render it overly complex or mean that bifurcation is warranted. Similarly, Depomed takes issue with Purdue's characterization of the burden to be faced by a jury in considering the damages theories at issue here. Specifically, Depomed argues that "Purdue has failed to demonstrate why the explanation of the damages issues here, including the *Georgia-Pacific* royalty rate factors, would be more complex than the damages case in any other patent trial." (*Id*. at 8). Again, Depomed contends that Purdue has failed to demonstrate how the complexity of this matter differs from the average patent case or show why this Court should deviate from the typical path and bifurcate this case.

Turning next to judicial economy, far from promoting same, Depomed argues that bifurcating this matter into liability and damages phases "will undoubtedly result in a substantial waste of time, money, and judicial resources." (*Id*.) Depomed argues that bifurcation would result in significant resources being wasted and justice being delayed for several reasons. First Depomed claims that the issues and evidence related to liability and damages overlap substantially and, as such, bifurcation would result in a significant, not to mention inefficient,

9

duplication of evidence and testimony.  For example, Depomed argues that both trials would require (1) Depomed to educate the jury about the patented technology; (2) the demonstration of identical sales information regarding Depomed's and Purdue's products (to show commercial success in the liability phase and to demonstrate damages); (3) the use of identical evidence and witnesses to rebut invalidity in the liability phase and to show that the patented technology represented a significant advancement over the prior art in the damages phase; and (4) duplicative expert technical testimony to provide the jury with a technical background as well as to demonstrate several of the *Georgia-Pacific* factors.  In light of this overlap, Depomed argues that bifurcation, far from promoting judicial economy and efficiency, would certainly increase inefficiency.

Second, in addition to the overlap between liability and damages, Depomed argues that the overlap between liability and willfulness weighs against bifurcation.  While Depomed has not asserted a willful infringement claim at this date, Depomed argues that discovery on liability issues will help shed light on whether such a claim is appropriate.  Depomed notes that in order to establish willful infringement, it "must demonstrate to a jury that there is an objective risk that Purdue's actions 'constituted infringement of a valid patent' and 'was either known or so obvious that it should have been known' to Purdue."  (*Id.* at 10 (quoting *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc))).  Depomed argues that proof of the aforementioned objective risk factor "depends largely on the merits of Purdue's invalidity and non-infringement defenses," the main liability issues in this case.  As such, Depomed contends that there is a significant duplication in the testimony and evidence needed to establish liability and willfulness and, consequently, bifurcation of these issues is unwarranted.

Third, Depomed argues that any claim that bifurcating liability from damages and willfulness will promote settlement and potentially obviate the need to have a trial on damages is too speculative to satisfy Purdue's burden of establishing that bifurcation is warranted in this matter.

Finally, Depomed argues that it would be prejudiced if this matter is bifurcated. In this regard, Depomed notes that if this matter is bifurcated, its "potential recovery for Purdue's infringement of the asserted patents would be delayed by the years necessary to hold a second round of fact discovery, expert discovery, dispositive motion practice, trial and appeals." (*Id*. at 11). Depomed also contends that bifurcation would force it to "face the potential prejudice resulting from two separate trials with two separate juries[.]" (*Id*.) As a result, Depomed argues that Purdue has not met its burden in demonstrating that the benefits of bifurcating this matter outweigh the prejudice faced by Depomed.

Nevertheless, Depomed claims that even if the Court considers bifurcating this matter, the Court should deny Purdue's request to stay discovery on damages and willfulness. Depomed argues that such a stay would only work to "further increase inefficiency and cause significant prejudice to Depomed." (*Id*. at 12). Depomed argues that such a stay would not only increase the costs of litigating this matter (requiring two fact and expert discovery phases) but would also be inefficient given the overlap in issues related to liability, damages and willfulness. In addition, Depomed argues that staying discovery related to damages and willfulness will increase the risk of discovery disputes arising over what is relevant to liability as opposed to damages and willfulness. Consequently, Depomed argues that Purdue's requested stay of discovery be denied.

## II. Analysis

Federal Rule of Civil Procedure 42(b) governs requests to bifurcate. According to Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.*, Civil Action No. 03-555 (MLC), Civil Action No. 04-1686 (MLC), 2007 U.S. Dist. LEXIS 4652, at *12-13 (D.N.J. Jan. 22, 2007) (internal quotation marks and citation omitted). Though the "separation of issues for trial is not to be routinely ordered[.]" Advisory Committee Note, Amendment to Rule 42(b), 39 F.R.D. 113 (1966).

"Because 'a single trial tends to lessen the delay, expense and inconvenience to all parties,' the burden rests on the party seeking bifurcation to show that it is proper." *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F.Supp. 2d 709, 721 (D.N.J. 1999) (quoting *Miller v. N.J. Transit Auth. Rail Operations*, 160 F.R.D. 37, 40 (D.N.J. 1995) (citation omitted)). In determining whether bifurcation is warranted, "the court must consider whether separate trials would 'further convenience or avoid prejudice' or promote judicial economy." (*Id.* (quoting *Miller*, 160 F.R.D. at 40 (citation omitted)). "While there is no single factor that is determinative, when considering whether to bifurcate, 'courts should consider whether (a) there will be overlap in testimony and evidence between the two proceedings, (b) the issues to be decided at trial are complex and the factfinder is likely to become confused, (c) bifurcation will promote settlement, and (d) a single trial will cause unnecessary delay.'" *Wyeth v. Abbott Labs.*, Civil Action No. 08-230 (JAP), Civil Action No. 08-1021 (JAP), 2010 U.S. Dist. LEXIS 116921, at *2 (D.N.J. Nov. 3, 2010) (citation omitted).

Here, the Court finds that Purdue has failed to meet its burden to establish that bifurcating this matter into separate liability and damages phases is warranted. While Purdue relies on *Dutch Branch*, 2009 U.S. Dist. LEXIS 76006, at *2, to suggest that "bifurcation is appropriate, if not necessary, in all but exceptional patent cases[,]" that is not the law in this Circuit or this District. Instead, while the Court acknowledges that in general courts may be "'more willing to bifurcate patent trials than other types of cases[,]'" even in patent cases, "bifurcation 'remains the exception rather than the rule[.]'" *Graco, Inc. v. PMC Global, Inc.*, Civil Action No. 08-1304 (FLW) 2009 U.S. Dist. LEXIS 26845, at *125 (D.N.J. March 31, 2009) (quoting *Innovative Office Prods., Inc. v. Spaceco, Inc.*, Civil Action No. 05-04037, 2006 U.S. Dist. LEXIS 29439, at *4 (E.D.Pa. May 15, 2006)).

Purdue argues that the complexity of this matter weighs in favor of bifurcation. The Court, however, finds that there is nothing unique about this case that would make it any more complex than the average patent infringement matter. While complicated technical and legal issues will have to presented to the jury concerning the patents-in-suit, Purdue's OxyContin® products, Depomed's infringement claims and Purdue's invalidity defenses and counterclaims, the presentation of such issues is common to nearly every pharmaceutical patent case; as is the fact that the jury will have to hear evidence from a variety of technical experts. Similarly, while the damages inquiry, including the jury's assessment of a reasonable royalty under the fifteen *Georgia-Pacific* factors, will likely require the presentation of "detailed analyses and counter-analyses, examination and cross-examination of multiple experts and additional evidence" that again is true in essentially every pharmaceutical patent case where damages are at issue. Purdue has not presented any arguments that distinguish the complexity of this case from the typical patent infringement matter.

In fact, unlike other patent cases which have been bifurcated, this case involves only one defendant, Purdue, and a single infringing product. *Cf. Wyeth v. Abbott Labs.*, Civ. No. 08-1021 (JAP), 210 U.S. Dist. LEXIS 116921, at * 4 (D.N.J. Nov. 3, 2010) (bifurcating liability and damages where there were multiple patents, multiple accused products and multiple groups of defendants). Further, while three patents are at issue and while Depomed has asserted infringement of 37 separate claims, the three patents-in-suit contain almost identical specifications and Depomed has only asserted infringement of five independent claims. Under these circumstances, the Court finds that requiring a jury to simultaneously contend with the liability and damages issues is reasonable and would not amount to a Herculean undertaking as suggested by Purdue. Instead, the Court finds that the level of complexity associated with this patent infringement matter does not warrant bifurcation of liability and damages.

In addition, the Court remains unconvinced that bifurcation will increase efficiencies in this matter. While it is true that a finding in favor of Purdue during the liability phase would obviate the need for a trial on damages and willfulness, at this juncture, the potential for such a result is too remote to persuade the Court that bifurcation is warranted. *See Senorx, Inc. v. Hologic, Inc.*, Civ. No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 21897, at *11 (D.Del. Jan. 30, 2013) (denying motion to bifurcate filed in patent case in part because possible outcome that finding of liability could facilitate settlement or eliminate second trial was "entirely speculative at this stage" of litigation). For the same reason, the Court finds Purdue's claim that bifurcation may promote settlement too speculative to support a finding that bifurcating liability from damages and willfulness will promote efficiencies. *Id.* Indeed, when other factors are considered, it appears that bifurcation, far from increasing efficiencies, would likely delay the

final resolution of this matter and require the parties and the Court to spend extra resources resolving same.

In this regard, the Court finds that issues and evidence related to liability overlap with that of damages and willfulness. For example, with respect to liability and damages, both trials would require the jury to be educated about the patented product and Purdue's OxyContin® products. Both trials would require the presentation of the same sales information regarding Depomed's and Purdue's products. Both trials would require Depomed to use identical evidence and witnesses to rebut invalidity during the liability phase and to show that its inventions represented a significant advancement over the prior art in the damages phase. Further, duplicative expert testimony would be put on in both trials in order to provide the jury with a technical background and to establish a number of the *Georgia-Pacific* factors. Similarly, with respect to liability and willfulness, there is a significant overlap because, in order to establish willful infringement, Depomed would have to show that there is an objective risk that Purdue's conduct "constituted infringement of a valid patent" and "was either known or so obvious that it should have been known" to Purdue (*see In re Seagate Tech., LLC*, 497 F.3d at 1371), and the proof of said object risk is dependent upon the success of Purdue's invalidity and non-infringement defenses in the liability phase.

Further, the Court finds that bifurcating liability from damages and willfulness will likely result in increased discovery disputes between the parties. In this regard, the decision of what is relevant to liability as compared to damages and willfulness is not a bright line. Instead, because there is an overlap between these issues, if this matter is bifurcated, disagreements are bound to arise concerning whether the discovery sought bears on liability or whether it instead relates to damages and/or willfulness. Such discovery disputes will not only consume the parties' time and

energy but will also obviously impact the Court, requiring It to devote resources in deciding same. As such, the Court finds that concerns regarding judicial economy and efficiency actually weigh in favor of permitting this matter to proceed in its natural course as a single trial, instead of separating liability from damages and willfulness.

The Court also finds that Depomed would likely suffer some amount of prejudice if this matter is bifurcated. Specifically, bifurcation always creates the potential for prejudice from "the danger of two separate juries finding conflicting facts" and the "inevitable delay" associated with "two separate trials." *Joy Techs., Inc. v. Flakt, Inc.*, 772 F.Supp. 842, 849 (D.Del. 1991). Standing alone this prejudice, while real, may not have prevented the Court from bifurcating this matter. However, it does not stand alone and, everything considered, the Court finds that Purdue has not met its burden of demonstrating that bifurcation is warranted.[3]

### III. Conclusion

For the reasons stated above, Purdue's motion to bifurcate the trial of this matter and to stay all damages and willfulness related discovery is DENIED. An appropriate Order follows.

Dated: November 26, 2013

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] In light of this ruling, the Court finds it unnecessary to address Purdue's request to stay damages and willfulness related discovery.