NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEPOMED INC., | |
| Plaintiff, | Civil Action No. 13-571 (JAP) |
| v. | MEMORANDUM OPINION |
| PURDUE PHARMA L.P., et al., | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Defendants Purdue Pharma L.P., P.F. Laboratories, Inc. and Purdue Pharmaceuticals L.P.'s (collectively, "Purdue") application to stay discovery pending the Patent Trial and Appeal Board's (the "PTAB") decisions on Purdue's three petitions for *inter partes* review ("IPR"). Plaintiff Depomed, Inc. ("Depomed") opposes Purdue's application for a stay. The Court has fully reviewed and considered all of the arguments made in support of and in opposition to Purdue's application. The Court considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Purdue's motion is GRANTED.

## I. Background and Procedural History

On January 29, 2013, Depomed filed the Complaint in this matter alleging that Purdue infringed three of Depomed's patents: U.S. Patent Nos. 6,340,475 (the "'475 patent"), 6,635,280 (the "'280 patent") and 6,723,340 (the "'340 patent"). [Docket Entry No. 1]. Thereafter, on July 23, 2013, Depomed amended its Complaint to add a fourth patent, U.S. Patent No. 8,329,215 (the "'215 patent") to this lawsuit. [Docket Entry No. 49]. Depomed claims that Purdue's

OxyContin®, a controlled-release oxycodone pain relief medication, infringes the patents-in-suit. As such, Depomed seeks a judgment that Purdue has infringed the patents-in-suit, a permanent injunction enjoining Purdue from manufacturing, using, offering to sell or selling OxyContin® until the patents-in-suit expire as well as money damages.  On August 9, 2013, Purdue responded to Depomed's Amended Complaint denying infringement, asserting various affirmative defenses, including, but not limited to, noninfringement and invalidity, and asserting counterclaims seeking declarations of noninfringement and invalidity.  (*See generally* Purdue's Answer to Amended Complaint and Amended Counterclaims; Docket Entry No. 50).

On January 15, 2014, the parties submitted a letter to the Court indicating that they had agreed to dismiss with prejudice all claims and defenses related to two of the four patents-in-suit, the '340 and '215 patents. (Letter from Liza M. Walsh, Esq. to the Hon. Tonianne J. Bongiovanni of 1/15/2014; Docket Entry No. 68).  The Court conducted a telephone conference the following day.  During the telephone conference, the parties indicated that while certain discovery issues had arisen, they had agreed to mediate this matter.  Purdue also indicated that it intended to file petitions for IPR review concerning the remaining patents and would seek to have this matter stayed pending the IPR proceedings.  The Court and the parties discussed staying discovery, as well as the resolution of the outstanding discovery issues, until after mediation.  During the conference, the Court and the parties also discussed postponing any application to stay this matter pending IPR review until after the mediation took place.

On January 24, 2014, Purdue filed the three anticipated petitions for IPR review.  These petitions sought review of all of the asserted claims of the remaining two patents, the '475 and '280 patents.  On February 11, 2014, the Court emailed the parties to clarify that all discovery, other than that agreed to in mediation, had been stayed for sixty days.  The Court further

Case 3:13-cv-00571-MLC-TJB   Document 89   Filed 07/25/14   Page 3 of 13 PageID: 1101

confirmed that in the event mediation was not successful, the Court would address whether an additional stay pending IPR review was warranted. On April 15, 2014, the Court learned that despite the parties' best efforts, mediation was unsuccessful. Upon learning that mediation failed, the Court again emailed the parties to inform them that It intended to decide Purdue's request for a stay pending IPR review on an informal, expedited basis. The Court also relayed that the stay in the matter would remain in place pending a determination on Purdue's application to stay.

On July 9, 2014, the Court entered a Letter Order determining that Purdue's request for a stay was premature in light of the fact that the PTAB had not yet determined whether to grant IPR review. (*See* Letter Order of 7/9/2014; Docket Entry No. 84). Nevertheless, because the PTAB had at most 27 days left to render its decision, the Court found that it would be inefficient to reopen discovery at that juncture. Consequently, the Court maintained the stay currently in place and directed Purdue to inform the Court immediately upon learning of the PTAB's decision with respect to the petitions for IPR review of the '475 and '280 patents. (*Id*.) On July 11, 2014, Purdue informed the Court of the PTAB's July 10, 2014 decisions to institute IPR review of every claim asserted by Depomed against Purdue other than dependent claims 11 and 12 of the '475 and '280 patents. (*See* Letter from Liza M. Walsh to the Hon. Tonianne J. Bongiovanni of 7/11/2014; Docket Entry No. 85). The Court now considers Purdue's request to stay this matter pending the PTAB's final decisions on the three pending IPRs of the two remaining patents-in-suit.

### II. Analysis

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). As such, the decision to stay a patent case in which the PTAB has granted a request for IPR review rests within the sound discretion of the court. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted).

Staying a matter pending IPR review comes with both costs and benefits. In balancing these costs and benefits to determine whether to grant a stay, courts typically apply a three-part test. Under this test, courts consider "'(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Stryker Trauma S.A. v. Synthes (USA)*, Civil Action No. 01-3879 (JLL), 2008 WL 877848, *1 (D.N.J. March 28, 2008) (quoting *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999)). These factors are discussed in greater detail below.

### A. Prejudice

The Court first considers whether granting the requested stay would cause Depomed undue prejudice or place Depomed at a clear tactical disadvantage. In so doing, the Court is mindful of the fact that staying any case pending IPR review by the PTAB naturally risks prolonging the final resolution of the pending case and, as such, may result in some inherent prejudice to the non-moving party. *See Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS,

2007 WL 7772169, at *2 (D.Del. April 25, 2007).  The Court, however, is equally mindful of the fact that the delay inherent in the review process is, itself, insufficient to establish undue prejudice.  *See Oy Ajat, Ltd. v. Vatech Am., Inc.*, Civil Action No. 10-4875 (PGS), 2012 WL 1067900, *21 (D.N.J. March 29, 2012); *Brass Smith, LLC v. RPI Indus., Inc.*, Civil No. 09-6344 (NLH/JS), 2010 WL 4444717, *4 (D.N.J. Nov. 1, 2010); *ICI Uniqema, Inc. v. Kobo Products, Inc.*, Civil Action No. 06-2943 (JAP), 2009 WL 4034829, at *2 (D.N.J. Nov. 20, 2009).  In determining whether a stay will likely result in undue prejudice to the non-moving party or place it at a tactical disadvantage, the Court considers a number of additional factors including "the timing of the request for reexamination, the timing of the request for [a] stay, the status of the reexamination proceedings and the relationship of the parties."  *Boston Scientific Corp. v. Cordis Corp.*, 777 F.Supp. 2d 783, 789 (D.Del. 2011).  For the reasons stated below, the Court finds that collectively these sub-factors do not weigh against imposing a stay.

### 1. Timing of IPR

Purdue filed its three petitions for IPR review on January 24, 2014, eleven months and seventeen days after Depomed's Complaint was filed and just two weeks before the one year statutory deadline would have expired.  Depomed argues that the timing of Purdue's petitions for IPR review indicates gamesmanship on the part of Purdue and is just another example of Purdue posturing to delay the resolution of this matter for as long as possible.  In this regard, Depomed points to Purdue's motion to bifurcate and its failure to produce the accused product and witnesses for deposition for over six months as examples of Purdue's history of delay.  Purdue, however, claims that it promptly filed its petitions after the true scope of this matter was clarified when two of the patents-in-suit, *i.e.*, the '340 and '215 patents, were dropped from this litigation.

While courts are reluctant "to grant a stay where the timing of the request for PTO review suggests a dilatory intent on the movant's part[,]" the Court is not convinced that the timing of the IPRs here indicates that Purdue had such an intent.  *Nexans, Inc. v, Belden Inc.*, No. 12-1491-SLR-SRF, 2014 WL 651913, at *3 (D.Del. Feb. 19, 2014) (citation omitted).  Although Purdue filed its petitions for IPR review just two weeks shy of the one year statutory deadline, it did so within essentially 10 days of two patents being voluntarily dismissed from this matter.  The Court finds no gamesmanship on the part of Purdue.  At best, this sub-factor is neutral neither weighing in favor of or against the imposition of a stay.

### 2. Timing of Request for Stay

Purdue vocalized its intent to move to stay these proceedings pending IPR before the petitions were even filed.  Indeed, the day after the parties agreed to dismiss with prejudice all claims and defenses related to the '340 and '215 patents, Purdue, on a telephone conference with the Court, stated that it would seek to stay this litigation pending the PTAB's review of the three petitions for IPR it intended to file.  After the IPRs were filed, Purdue renewed its request for a stay.  Nothing about the timing of Purdue's request for a stay indicates that it sought an improper tactical advantage over Depomed or that Depomed would be unduly prejudiced by a stay.

### 3. Status of Review

On July 10, 2014, the PTAB decided to grant review of the '475 and '280 patents.  Under the new IPR procedures, the PTAB must complete its review and issue a final determination on the three petitions for IPR within eighteen months.  *Davol, Inc. v. Atrium Medical Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *2 (D.Del. June 17, 2013) (citing 35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. § 42.107).  The PTAB has already scheduled a hearing date of March 19, 2015 for all three IPRs.  (Letter from Liza M. Walsh, Esq. to the Hon. Tonianne J. Bongiovanni

of 7/21/2014 at 1; Docket Entry No. 88).  While as noted above, essentially any delay carries with it the risk of some prejudice to Depomed, the delay inherent in the review process is, itself, insufficient to establish undue prejudice.  Furthermore, while a stay of this action would certainly delay these proceedings, given the status of review, the Court does not view the anticipated delay to be substantially protracted.  As a result, the Court finds that this sub-factor militates in favor of granting a stay.

### 4. Relationship of the Parties

"Courts are hesitant to grant a stay in a matter where the parties are direct competitors." *Neste Oil OYJ v. Dynamic Fuels LLC*, Civil Action No. 12-1744-GM, 2013 WL 3353984, at *3 (D.Del. July 2, 2013).  Here, the parties dispute whether they are in fact direct competitors. Depomed contends that they are, noting that "on March 12, 2014, the U.S. Food & Drug Administration ("FDA") approved Mallinckrodt's use of Depomed's patented technology in an oxycodone hydrochloride based drug in the marketplace that directly competes with Purdue's accused OcyContin® product[.]"  (Letter from Leda Dunn Wettre, Esq. to the Hon. Tonianne J. Bongiovanni of 4/30/2014 at 3; Docket Entry No. 81).  Indeed, Depomed claims that Mallinckrodt's drug, XARTEMIS$^{TM}$ XR Extended-Release Tablets (CII), which are composed of oxycodone hydrochloride and acetaminophen, are directed to the same market as Purdue's product, OxyContin®.  (*See* Letter from Leda Dunn Wettre, Esq. to the Hon. Tonianne J. Bongiovanni of 5/5/2014 at 2; Docket Entry No. 82).  Depomed states that it "expect[s] to receive significant recurring royalty revenue from Mallinckrodt's commercialization of XARTEMIS XR."  (*Id*. (internal quotation marks and citation omitted)).  As a result, Depomed claims that it "will be significantly prejudiced by a stay because the longer Purdue is permitted to

7

infringe, the longer Depomed will suffer the improper diminution of the value of its licensed patents and its rightful market share attributable to its patented technology." (*Id.*)

Purdue disagrees. Purdue argues that unlike OxyContin®, Mallinckrodt's product "is a 'combination product' for short-term pain." (Letter from Liza M. Walsh, Esq. to the Hon. Tonianne J. Bongiovanni of 5/5/2014 at 4; Docket Entry No. 83). In this regard, as Depomed acknowledges, Mallinckrodt's product contains both oxycodone hydrochloride and acetaminophen, whereas Purdue's product does not contain acetaminophen. Purdue argues that "[c]ombination products containing acetaminophen suffer dosing constraints because acetaminophen has been associated with increased risk of liver damage." (*Id.*) Purdue also argues that there are already several combination oxycodone-acetaminophen products sold in the United States, such as Percocet®, and that "as a new entrant, Mallinckrodt's product does not have an established market share or track record." (*Id.*) Further, Purdue contends that its product, in addition to not containing acetaminophen, "is indicated for chronic, long-term pain – not short-term pain." (*Id.*) As a result, Purdue argues that its product and that offered by Mallinckrodt are in different market categories. Under these circumstances, Purdue contends that its relationship with Depomed does not support a finding of undue prejudice.

Given Depomed's licensing arrangement with Mallinckrodt, it appears that there may be some competition in the market between Depomed and Purdue. The practical scope of said competition, however, is in question. Unlike Mallinckrodt's product, which is a combination product containing acetaminophen, Purdue's product does not contain acetaminophen and therefore is not subject to the same dosing constraints as Mallinckrodt's product can only reasonably be assumed to be. Further, while Mallinckrodt's product, like Purdue's, is used for the treatment of pain, it appears that Purdue's product is indicated for chronic, long-term pain,

while Mallinckrodt's may not be. Moreover, it appears that there are already a number of manufacturers selling combination oxycodone-acetaminophen products in the market. *See Neste Oil OYJ*, 2013 WL 3353984, at *3 (noting that presence of multiple active firms in relevant market may decrease likelihood of prejudice to plaintiff). Given these facts, the Court is not persuaded that the parties' relationship weighs against a stay.[1]

### B. Simplification of Issues for Trial

A stay pending IPR review by the PTAB can simplify the pending litigation in several ways. For example, advantages from staying a matter that may result in the simplification of issues include:

> (1) a review of all prior art presented to a court by the PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent by found by the PTO; (4) encouragement to settle based upon the outcome of the PTO reexamination; (5) an admissible record at trial from the PTO proceedings which would reduce the complexity and length of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court.

*Eberle v. Harris*, Civil Action No. 03-5809 (SRC), 2005 WL 6192865, *2 (D.N.J. Dec. 8, 2005) (citing *GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992)). Obviously, where all of the asserted claims are found invalid as a result of the IPR proceedings, the "litigation would be simplified because it would be concluded." *Softview LLC v. Apple Inc.*,

---

[1] In reaching this conclusion, the Court notes that where there is a question as to whether there is direct competition between the parties, courts at times consider whether the plaintiff sought a preliminary injunction because "[t]he decision by a litigant to seek such injunctive relief may suggest that the parties, in fact, do compete and that real prejudice will flow from the imposition of a stay." *Neste Oil Oyj*, 2013 WL 3353984, at *4 (citing *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *8 (D.Del. Jan. 11, 2013)). Here, Depomed has not sought preliminary injunctive relief.

9

C.A. No. 12-989-LPS, C.A. No. 10-389-LPS, 2013 WL 4757831, at *1 (D.Del. Sept. 4, 2013) (internal quotation marks omitted). However, as just noted, simplification can result even if only some of the asserted claims are found to be invalid in that "the number of issues left to be litigated" is reduced. *Id*. Indeed, even where "some or all of the claims are found not invalid" the litigation "should be somewhat simplified due to the estoppel effect" of the IPR proceedings and because of the insight a court gains from the PTAB's review process. *Id*.; *see* 35 U.S.C. § 315(e)(2) (stating that if PTAB grants petition for IPR, petitioner is estopped from asserting invalidity in civil action on "any ground that the petitioner raised or reasonably could have raised during that inter partes review.")

The likelihood that IPR review will simplify the issues also depends on the number of claims asserted in the pending litigation that would be subject to IPR review as well as the overlap between the issues to be decided in the litigation and the IPR proceedings. The more the scope of the litigation exceeds the scope of the IPR proceedings, the less likely the IPR proceedings and requested stay will simplify the issues. (*See Princeton Digital Image Corp. v. Konami Digital Entertainment Inc., et al.*, Civil Action No. 12-1461-LPS-CJB, Civil Action No. 13-335-LPS-CJB, at *5-6 (D.Del. Jan. 15, 2014); Docket Entry No. 80-1).

Here, the Court finds that this factor favors imposing a stay. On July 10, 2014, the PTAB decided to institute IPR review of all claims asserted by Depomed against Purdue other than dependent claims 11 and 12 of the '475 and '280 patents. Despite the significant number of claims at issue in this litigation that will also be considered in the IPR proceedings, Depomed contends that this factor does not favor imposing the requested stay. In this regard, Depomed claims that the PTAB instituted IPR review under 35 U.S.C. §§ 102(e) & 103 for particular combinations of prior art and "explicitly declined to institute IPR review on the grounds of

10

anticipation under 35 U.S.C. § 102(b)." (Letter from Leda Dunn Wettre, Esq.to the Hon. Tonianne J. Bongiovanni of 7/16/2014 at 1; Docket Entry No. 86). Further, Depomed argues that "the only combinations of prior art references in the IPRs that are identical to that asserted by [Purdue] in this litigation concern just <u>six of the seventeen</u> asserted claims in . . . the '475 Patent" and "<u>one of twelve</u> asserted claims of the '280 Patent." (*Id*.; Letter from Leda Dunn Wettre, Esq. to Hon. Tonianne J. Bongiovanni of 7/18/2014 at 1; Docket Entry No. 87). In addition, Depomed contends that the claims subject to IPR review involve only method claims and that none of the exact same invalidity challenges that are the subject of the IPR proceedings apply to the product claims asserted by Depomed against Purdue. (Letter from Leda Dunn Wettre, Esq. to the Hon. Tonianne J. Bongiovanni of 7/16/2014 at 1, n. 1). Depomed also argues that the IPR proceedings cannot dispose of "Depomed's claims of infringement and damages, Purdue's claims of invalidity under 35 U.S.C. §§ 101, 112 purdue's defense regarding failure to comply with marking, and Purdue's defense of no equitable relief." (*Id*. at 1-2). For these reasons, Depomed argues that, at best, the outcome of the IPRs will have only a minimal impact on this litigation and will not simplify the majority of issues to be decided in this case.

The Court disagrees. While Depomed is correct that there are matters presented in this case that cannot and/or will not be addressed through the IPR proceedings, as already noted "the 'issue simplification' factor does not require complete overlap." *Neste Oil*, 2013 WL 3353984 at *5. Here, almost every claim asserted by Depomed against Purdue is at issue in the IPR proceedings. Further, while certain issues like those involving infringement and damages cannot be addressed in the IPR review, if the asserted claims are found to be invalid, such issues will not have to be addressed. Moreover, the IPR proceedings will have an estoppel effect on Purdue. Should the PTAB determine that one or more of the asserted claims is not invalid, Purdue will be

estopped from asserting in this litigation any prior art that it asserted or reasonably could have asserted in the IPRs. 35 U.S.C. §315(e). Simply put, the Court finds that there is a significant likelihood that the IPR proceedings will simplify and streamline the issues to be decided here. Consequently, the Court finds that this factor weighs in favor of granting Purdue's requested stay.

### C. Status of Litigation

Applications to stay are most often granted when the case remains in the early stages of litigation. *See Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 06-514 GMS, 2007 U.S. Dist. LEXIS 73198, at *15 (D.Del. Sept. 30, 2007) (staying case "where the court ha[d] not yet conducted a Rule 16(b)(2) scheduling conference, no scheduling Order [wa]s in place, no discovery ha[d] taken place, and little time ha[d] yet been invested in the litigation.") Staying a case early in the litigation can be said to "'save time and judicial resources'" (*Id*.), as the stay "maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.'" *Neste Oil OYJ*, 2013 WL 3353984, at*5 (quoting *SenoRx, Inc.*, 2013 WL 144255, at *7). In contrast, when a matter has already reached its later stages with discovery being complete and/or a trial date being set, requests to stay are less frequently granted. In such cases, "it is likely that 'the Court and the parties have already expended significant resources . . . and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.'" *Id*. (quoting *SenoRx, Inc.*, 2013 WL 144255, at *7).

Here, the Court finds that the stage of proceedings weighs in favor of granting the requested stay. While it is true that this matter is not in its absolute infancy – a scheduling conference has been held, discovery has taken place, a discovery motion has been decided, a mediation has occurred – it is still in the relatively early stages of these proceedings. Indeed,

while fact discovery has commenced, only document discovery has been exchanged; no depositions have been taken. Further, a *Markman* hearing has not been held. In fact the claim construction process has not yet begun. In addition, expert discovery still needs to take place, dispositive motions remain to be filed and a trial date has not been set. Under these circumstances, the Court finds that a stay will promote judicial economy and efficiency by maximizing the use of the Court's and the parties' resources.

### III.     Conclusion

Balancing the three factors discussed above, the Court finds that a stay is warranted here. The Court finds that the likelihood of Depomed being prejudiced by a stay is minimal. Further, the PTAB's decisions on Purdue's three petitions for IPR review will likely substantially simplify the issues before the Court and the relatively early stage of these proceedings increases the likelihood that a stay will promote judicial economy and the efficient resolution of this matter. For these reasons, Purdue's application to stay this litigation pending IPR review is GRANTED. An appropriate Order follows.

Dated: July 25, 2013

                                                 s/Tonianne J. Bongiovanni
                                                 **HONORABLE TONIANNE J. BONGIOVANNI**
                                                 **UNITED STATES MAGISTRATE JUDGE**