Liza M. Walsh
Eleonore Ofosu-Antwi
CONNELL FOLEY LLP
One Newark Center
1085 Raymond Blvd., 19th Floor
Newark, New Jersey 07102
(973) 757-1100

John J. Normile
Kelsey I. Nix
Gasper LaRosa
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

*Attorneys for Defendants and Counterclaim-Plaintiffs
Purdue Pharma L.P., The P.F. Laboratories, Inc., and
Purdue Pharmaceuticals L.P.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEPOMED, INC.<br><br>                Plaintiff,<br><br>v.<br><br>PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., and PURDUE PHARMACEUTICALS L.P.<br><br>                Defendants. | Civil Action No. 13-571-MLC-TJB<br><br>*Filed Electronically* |

**PURDUE'S MEMORANDUM OF LAW IN OPPOSITION TO
DEPOMED'S APPEAL OF ORDER OF MAGISTRATE JUDGE,
PURSUANT TO FED. R. CIV. P. 72 AND L. CIV. R. 72.1(c)**

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ....................................................................................................1

II.    PROCEDURAL BACKGROUND ...........................................................................2

III.    JUDGE BONGIOVANNI'S ORDER CONTINUING THE STAY WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW ............................5

    A.    The Magistrate Judge Did Not Abuse Her Broad Discretion In Permitting A Brief Continuation Of The Stay Pending Expedited Appeal .............................6

    B.    The Expedited Appeal Will Not Prejudice Depomed Because It Will Likely Take Only Six Months, And Will Foster, Not Impede, Efficient Resolution Of This Case ...................................................................................6

    C.    Depomed Fails To Address The Remaining Factors, Which Further Support The Magistrate Judge's Decision........................................................11

        1.    The Stay May Simplify The Issues And The Trial Of The Case .............11

        2.    Discovery Is At Its Early Stages And No Trial Date Has Been Set.........12

IV.    CONCLUSION .......................................................................................................13

# **TABLE OF AUTHORITIES**

                                                                                                              **Page**

**CASES**

*Actelion Pharms., Ltd. v. Apotex Inc.*,
   2013 U.S. Dist. LEXIS 135524 (D.N.J. Sept. 6, 2013)............................................................5

*Collick v. Weeks Marine, Inc.*,
   2014 U.S. Dist. LEXIS 104365 (D.N.J. July 30, 2014) ...........................................................5

*Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*,
   131 F.R.D. 63 (D.N.J. 1990)....................................................................................................5

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
   2015 U.S. Dist. LEXIS 29495 (D.N.J. Mar. 10, 2015) ...........................................................9

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013)..............................................................................................11

*Graceway Pharms., LLC v. Perrigo Co.*,
   722 F. Supp. 2d 566 (D.N.J. 2010) ........................................................................................11

*Gunter v. Ridgewood Energy Corp.*,
   32 F. Supp. 2d 162 (D.N.J. 1998) ............................................................................................5

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007) ...............................................................................................................12

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
   2011 WL 487574 (D.N.J. Feb. 7, 2011)..................................................................................6

*Marks v. Struble*,
   347 F. Supp. 2d 136 (D.N.J. 2004) ..........................................................................................5

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
   2013 WL 3353984 (D. Del. July 2, 2013) .............................................................................10

*Paice LLC v. Toyota Motor Corp.*,
   2006 U.S. Dist. LEXIS 61600 (E.D. Tex. Aug. 16, 2006) ....................................................11

*Smith & Nephew, Inc. v. Rea*,
   721 F.3d 1371 (Fed. Cir. 2013)..............................................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Ultratec, Inc. v. Sorenson Communs., Inc.*,
   2015 U.S. Dist. LEXIS 62561 (W.D. Wis. May 13, 2015) ................................................... 12

*Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc.*,
   2015 U.S. Dist. LEXIS 12693 (N.D. Cal. Feb. 2, 2015) ....................................................... 12

**STATUTES**

21 U.S.C. § 355(b)(1) ............................................................................................................... 10

35 U.S.C. § 141 .......................................................................................................................... 4

**OTHER AUTHORITIES**

37 C.F.R. § 90.3(a) ..................................................................................................................... 4

Fed. R. Civ. P. 72(a) ............................................................................................................... 5, 6

L. Civ. R. 72.1(c)(1)(A) ............................................................................................................. 5

Defendants and Counterclaim-Plaintiffs Purdue Pharma L.P., The P.F. Laboratories, Inc., and Purdue Pharmaceuticals L.P. (collectively, "Purdue") respectfully request that the Court affirm Judge Bongiovanni's September 28, 2015 Order continuing the stay of this case pending the expedited appeal of the Patent Trial and Appeal Board's ("PTAB") final written decisions in *Purdue Pharma L.P. v. Depomed, Inc.*, IPR2014-00377, -00378, and -00379 ("the *Purdue* IPRs") to the United States Court of Appeals for the Federal Circuit. Purdue has already filed its opening appeal brief and the Federal Circuit has ordered an early hearing.

## I.     INTRODUCTION

The law grants Judge Bongiovanni broad discretion over case management, which she properly exercised by continuing the stay. As an initial matter, Depomed does not, and cannot, challenge Judge Bongiovanni's orderly management of this case by entering a stay pending Purdue's IPRs challenging the patents-in-suit because Depomed failed to timely appeal that July 2014 stay order— or the subsequent order continuing the stay for related reasons. As for the only order on appeal, the September 24, 2015 order continuing the stay, Depomed fails to show that that short continuation pending Purdue's expedited appeal—potentially as brief as six months—(a) was an abuse of the Magistrate Judge's broad discretion, (b) is based on any clearly erroneous factual finding, or (c) is contrary to law. Depomed argues that this Court's intervention is necessary because the appeal "is not an expedited appeal," but the Federal Circuit plainly ordered that the appeal proceed on an expedited basis—including a hearing at the next available argument session after briefing concludes on December 7, 2015—and empirical evidence flatly belies Depomed's bald assertion that the appeal could last for one-half to two years.

Depomed's only other argument on appeal is that Judge Bongiovanni failed to consider

the alleged prejudice it would suffer. But Judge Bongiovanni could not possibly have made any error or abused her broad discretion in this respect because Depomed's request to lift the stay <u>did not even refer to any "prejudice" to Depomed</u>.[1] Nor did Depomed address the other two stay factors—whether a stay would simplify the issues and how far the case has progressed—an error it continues before this Court. Depomed's appeal should therefore be rejected.

## II.  PROCEDURAL BACKGROUND

1.  On January 29, 2013, nearly two and one-half years after Purdue's accused OxyContin® products entered the market, Depomed filed its complaint alleging infringement of the two patents-in-suit—U.S. Patent Nos. 6,635,280 and 6,340,475 (the "'280 and '475 patents," respectively)—and a third patent, U.S. Patent No. 6,723,340 (the "'340 patent"). Depomed amended its complaint six months later, on July 23, 2013, to add a fourth patent, U.S. Patent No. 8,329,215 (the "'215 patent"). (D.I. 49.) Then, on January 15, 2014, about a year after it initiated this action, Depomed agreed to dismiss all claims and defenses related to the '340 and '215 patents, leaving only the '280 and '475 patents at issue. (D.I. 68.) Until then the issues in the case were unclear.

2.  On January 16, 2014, during a telephone conference with the Court, the parties indicated that while certain discovery issues had arisen, they had agreed to mediate this matter. Purdue also indicated that it intended to file petitions for *inter partes* review ("IPR") concerning the '280 and '475 patents and would seek to have this matter stayed pending the IPR proceedings. The Court and the parties discussed staying discovery, as well as the resolution of the outstanding discovery issues, until after mediation.

---

[1] To the extent Depomed relied on arguments it raised at the time Purdue originally requested the stay, Judge Bongiovanni fully considered and properly rejected those arguments in her July 25, 2015 13-page opinion, which Depomed did not appeal. (D.I. 89.)

2

3. On January 24, 2014, less than two weeks after Depomed dropped two of the four patents, Purdue filed three IPR petitions challenging the two remaining patents-in-suit. At that time, the case had already been referred to Judge Bongiovanni for pretrial matters since February 2013, and was at a relatively early stage: (a) no depositions had been taken, (b) claim construction briefing had not yet begun, (c) expert discovery had not taken place, (d) no dispositive motions had been filed, and (e) no trial date had been set. (D.I. 89 at 12-13.)

4. On February 11, 2014, the Court clarified that all discovery had been stayed for sixty days, except as agreed to in mediation. (D.I. 89 at 2.) Upon later learning that mediation was unsuccessful, the Court informed the parties that it intended to decide Purdue's request for a stay pending IPR review on an informal, expedited basis. On July 9, 2014, the Magistrate Judge entered a Letter Order that Purdue's request for a stay was premature because the PTAB had not yet determined whether to grant IPR review. Nevertheless, the Court maintained the stay of discovery pending the PTAB's institution decisions, which were due in only 27 days. (D.I. 84.) Depomed did not appeal the discovery stay.

5. On July 10, 2014, the PTAB decided to institute IPR review in all three proceedings. (D.I. 85). The next day, Purdue informed the Court of those decisions, and requested that the stay be continued pending the PTAB's final written decisions in the *Purdue IPRs*, which the PTAB had a year to issue. On July 24, 2014, the Magistrate Judge granted Purdue's request. (D.I. 89.) In her 13-page opinion, Judge Bongiovanni carefully analyzed: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to Depomed; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. (D.I. 89.) After "[b]alancing the three factors discussed above, the Court [found] that a stay is warranted here." (D.I. 89 at 13.)

3

Depomed did not appeal this order either.

6.     On July 8, 2015, the PTAB issued its final written decisions in the *Purdue* IPRs. Purdue informed the Court of this development, and, given the possibility that the IPRs in *Endo Pharmaceutical Inc., v. Depomed, Inc*., IPR2014-00654 and -00656 ("the *Endo* IPRs") could further narrow the issues in this case, requested that the Court continue the stay pending the PTAB's decisions in the *Endo* IPRs.[2] (D.I. 101.) On July 22, 2015, Judge Bongiovanni granted the request and continued the stay pending the *Endo* IPRs. (D.I. 104.) Again, Depomed did not appeal. In the meantime, Purdue filed its notices of appeal to the Federal Circuit for the *Purdue* IPRs on August 3, 2015, more than five weeks before the deadline. *See* 35 U.S.C. § 141; 37 C.F.R. § 90.3(a).

7.     On September 21, 2015, the PTAB issued its decisions in the *Endo* IPRs.[3] The next day, in a one-page letter, Depomed informed the Court of the PTAB's decisions and requested that the Court lift the stay. Depomed's September 22 letter did not show that any other new facts or changed circumstances had arisen since the initial unappealed stay order, did not discuss any legal standard for evaluating its request, and did not articulate any alleged prejudice that Depomed would suffer if the stay were continued. (D.I. 105.) Depomed's only asserted basis for asking the Court to lift the stay was that a continued stay would allegedly "impede Depomed's right to obtain efficient judicial resolution of its claims of infringement against Purdue." (D.I. 105 at 1-2.)

8.     On September 24, 2015, Purdue responded in a three-page letter requesting that

---

[2] In the *Endo* IPRs, the PTAB instituted review on thirteen claims of the '475 patent and ten claims of the '280 patent, which significantly overlapped with the claims at issue in the *Purdue* IPRs and the claims asserted in this case.
[3] Depomed's memorandum mistakenly states that the PTAB issued its decisions on September 22, 2015. (D.I. 109-1 at 4.)

4

the Court continue the stay pending Purdue's appeal to the Federal Circuit from the *Purdue* IPRs. (D.I. 106.) As Purdue explained, the pending appeal would likely simplify the issues for this case and would not unduly prejudice Depomed. Moreover, the appeal would likely proceed at an expedited pace, potentially concluding within six months from the time the opening brief is filed, as Purdue had already self-expedited its notices of appeal and had submitted to the Federal Circuit an Emergency Motion to Expedite Proceedings (which Depomed declined to join). The next day, the Federal Circuit granted Purdue's motion to expedite the appeal, and Purdue relayed that development to this Court later the same day. (D.I. 107.) In its order, the Federal Circuit set an expedited schedule wherein briefing will be completed by December 7, 2015, and agreed to schedule oral argument "during the next available argument calendar week." Three days later, on September 28, 2015, Judge Bongiovanni issued an order denying Depomed's request to lift the stay and continuing the stay pending Purdue's appeal to the Federal Circuit. (D.I. 108.)

### III. JUDGE BONGIOVANNI'S ORDER CONTINUING THE STAY WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW

As this Court has stated, "[a] Magistrate Judge is to be accorded wide discretion in addressing nondispositive matters." *Collick v. Weeks Marine, Inc.*, 2014 U.S. Dist. LEXIS 104365, 16 (D.N.J. July 30, 2014) (Ex. A); *Actelion Pharms., Ltd. v. Apotex Inc.*, 2013 U.S. Dist. LEXIS 135524, 9-10 (D.N.J. Sept. 6, 2013) (Ex. B). The Court may not modify or set aside a magistrate judge's order unless it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A magistrate judge's finding is clearly erroneous only when, after considering the entirety of the evidence, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990). A legal ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. *Gunter v. Ridgewood Energy*

5

*Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998).  The burden of showing that a ruling is "'clearly erroneous or contrary to law'" rests with the party filing the appeal.  *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).  Moreover, a party appealing a magistrate judge's order "may not assign as error a defect in the order not timely objected to."  Fed. R. Civ. P. 72(a).

### A. The Magistrate Judge Did Not Abuse Her Broad Discretion In Permitting A Brief Continuation Of The Stay Pending Expedited Appeal

The Magistrate Judge quite reasonably exercised her broad discretion in continuing the stay pending conclusion of Purdue's expedited appeal to the Federal Circuit.  When presented with a stay request in the first instance, a magistrate judge is to consider three factors: "'(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and the trial of the case; and (3) whether discovery is complete and a trial date has been set.'"  *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 487574 (D.N.J. Feb. 7, 2011) (Ex. C).  As Judge Bongiovanni noted in initially granting the stay in July 2014, "the stage of proceedings weighs in favor" of a stay, which "will promote judicial economy and efficiency by maximizing the use of the Court's and the parties' resources."  (D.I. 89 at 12-13.)  In determining whether a stay would result in undue prejudice to Depomed, Judge Bongiovanni considered the timing of the IPR, the timing of the request for a stay, the status of the IPR review, and the relationship of the parties, and she concluded that these factors "do not weigh against imposing a stay."  (D.I. 89 at 5-9.)  Depomed did not appeal that order. Fed. R. Civ. P. 72(a).  And as Purdue explained in opposing Depomed's September 22 request to lift the stay, continuing the stay pending Purdue's appeal will further foster efficiency without undue prejudice to Depomed.  The Magistrate Judge properly denied Depomed's request.

### B. The Expedited Appeal Will Not Prejudice Depomed Because It Will Likely

**Take Only Six Months, And Will Foster, Not Impede, Efficient Resolution Of This Case**

Depomed has provided no basis for this Court to find that the Magistrate Judge abused her discretion in continuing the stay pending Purdue's appeal and denying Depomed's request to lift the stay. Depomed does not even attempt to show that Judge Bongiovanni's order was contrary to law. Indeed, Depomed cites no case where a district judge has overturned a magistrate judge's stay order on appeal for legal error. This is not surprising: Depomed did not cite any cases, statutes or other legal authority in its September 22 letter requesting that the Court lift the stay.

Judge Bongiovanni's order is also not based on any "clearly erroneous" factual finding. Depomed complains that the appeal will take "one-and-a-half to two years" and that this length of time will prejudice Depomed. (D.I. 109-1 at 1.) Depomed's timing calculation is wrong, and its "prejudice" argument is also wrong—and much of it is entirely new on appeal.

There is no indication that the appeal will take more than a year, and it likely will be decided much sooner. To the contrary, Purdue has taken every step within its power to expedite the appeal:

- Purdue filed its notices of appeal more than five weeks before the statutory deadline.

- Purdue promptly moved the Federal Circuit to expedite the appeal—and Depomed, despite being asked to do so, declined to join or consent to that motion.

- Purdue filed its opening appeal brief on October 5, 2015, nearly six weeks in advance of the deadline prescribed by the Federal Circuit's rules.

These steps alone cut almost three months off of the timetable for an ordinary appeal.

Furthermore, the Federal Circuit granted Purdue's Emergency Motion to Expedite Proceedings, and set forth a schedule wherein all briefing on the appeal will be completed by

7

December 7, 2015. The Federal Circuit also agreed to schedule an early oral argument "during the next available argument calendar week after the reply brief is filed." The only way this schedule could have been any more expedited would have been for Depomed to agree to shorten the time for filing its brief, which it did not do.

Thus, as Purdue explained to Judge Bongiovanni, oral argument could take place as early as January 2016, with a decision likely to follow within three months thereafter. (D.I. 107 at 1.)

Depomed's assertion that Judge Bongiovanni relied on "Purdue's conjecture" as to that timeline, (D.I. 109-1 at 6), is speculative and without merit. In appeals taken from PTAB final written decisions, the average time between oral argument and a Federal Circuit decision is less than one month.[4] Indeed, in the only appeal from an IPR final written decision where the Federal Circuit ordered expedited briefing, as the court did in this case, a decision was issued within five months from the time the appeal was docketed.[5] Thus, Purdue was not offering mere speculation, but a real-world estimate based upon empirical evidence. Conversely, Depomed's contention that the Court's order will extend the stay "for approximately another one-and-a-half to two years," (D.I. 109-1 at 1), or even for only "another nine months," (D.I. 109-1 at 6), is based on faulty assumptions and flawed math. Depomed's reliance on "recent statistics issued by the Federal Circuit" is inapplicable to expedited appeals. Moreover, Depomed offers no empirical evidence to support its conclusion that despite the expedited briefing schedule, the earliest the Federal Circuit would issue its decision is June 2016. (D.I. 109-1 at 6.)

Depomed's "prejudice" arguments are likewise without merit. Depomed's argument that "Judge Bongiovanni did not even give any consideration to . . . the undue prejudice and the clear

---

[4] Data analyzed from the 31 cases decided on appeal to the Federal Circuit from IPR or Covered Business Method proceedings as of October 8, 2015.
[5] *Bernina Int'l AG v. Handi Quilter, Inc.*, Docket No. 15-1229 (Fed. Cir. Jan. 7, 2015).

tactical disadvantage to Depomed from a stay," (D.I. 109-1 at 7), is unsubstantiated.  Judge Bongiovanni's initial order granting the stay in this case, (D.I. 89), addressed those factors in detail, and Depomed did not appeal that order.  Further, Depomed's September 22, 2015 letter requesting that the Court lift the stay failed to even mention—let alone establish—any alleged prejudice to Depomed, or otherwise provide any reason for Judge Bongiovanni to revisit the issue, beyond its general, conclusory assertion that a continued stay would "impede Depomed's right to obtain efficient judicial resolution" of its infringement claims.  (D.I. 105 at 1-2.)  Meanwhile, Purdue's September 24, 2015 letter requesting that the Court continue the stay explained why all of the relevant factors weigh in favor of continuing the stay pending appeal, including the efficiency of staying this case until the expedited appeal concludes.  (D.I. 106.)  Depomed's argument that Judge Bongiovanni failed to consider the alleged prejudice to Depomed is therefore baseless.

The remainder of Depomed's "prejudice" arguments are new on appeal because they were not presented to the Court in its September 22, 2015 letter requesting that the stay be lifted and should not be considered.  *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2015 U.S. Dist. LEXIS 29495, *4 (D.N.J. Mar. 10, 2015) (the district court "cannot consider evidence that was not presented to the magistrate judge" when resolving an appeal of a magistrate judge's decision) (Ex. D).  Even if they were considered here, they present no basis to upset the Magistrate Judge's considered management of this case.

*First*, Depomed's conclusory argument that its "patented technology is used in an oxycodone hydrochloride product that directly competes with Purdue's accused OxyContin product," (D.I. 109-1 at 9), was considered and rejected by Judge Bongiovanni in her initial July 2014 order granting the stay (which, again, Depomed did not appeal).  (D.I. 89 at 7-9.)  In any

9

event, Depomed's argument is without merit. The '280 and '475 patents are not listed in FDA's Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") in connection with Mallinckrodt's XARTEMIS® XR, which suggests that neither Depomed nor its licensee believe that the patents-in-suit cover that product. *See* 21 U.S.C. §355(b)(1). Moreover, the only active ingredient in Purdue's OxyContin® products is oxycodone hydrochloride. Conversely, XARTEMIS® XR is a "combination product" containing both oxycodone hydrochloride and acetaminophen for acute, short-term pain. (D.I. 83 at 4; D.I. 89 at 7-9.) The accused OxyContin® products are indicated for chronic, long-term pain, and thus are in a different market category from XARTEMIS® XR. Further, as the Magistrate Judge noted in her initial stay order, "it appears that there are already a number of manufacturers selling combination oxycodone-acetaminophen products in the market." (D.I. 89 at 9.) *See Neste Oil OYJ v. Dynamic Fuels, LLC*, 2013 WL 3353984, at *3 (D. Del. July 2, 2013) (noting that presence of multiple active firms in relevant market may decrease likelihood of prejudice to plaintiff) (Ex. E). As Judge Bongiovanni previously determined, "[g]iven these facts," the relationship between the parties' products does not "weigh[] against a stay." (D.I. 89 at 9.) Those facts have not changed in the interim.

*Second*, Depomed's argument that a continued stay will eliminate its opportunity to "enforce its right to exclude (i.e., injunctive relief)" is unsubstantiated. Depomed is not entitled to injunctive relief for several reasons: (a) the patents-in-suit expire in less than twelve months; (b) XARTEMIS® XR and OxyContin® do not directly compete in the market place, as discussed above; and (c) the patents-in-suit are widely licensed and money damages are calculable and sufficient. Depomed's decision to wait nearly three years after Purdue launched OxyContin® before suing Purdue, and its failure to seek preliminary injunctive relief once its

10

belated case was filed, together demonstrate that Depomed's prejudice arguments are nothing more than litigation-inspired conjecture.

Even if OxyContin® and XARTEMIS® XR were in direct competition (which they are not), no injunction would be warranted because money damages are calculable and sufficient, undermining the need for injunctive relief. *Graceway Pharms., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566, 577 (D.N.J. 2010) ("[M]oney damages can be calculated relatively easily and such a calculation undermines the position that harm is irreparable"). Further, Depomed does not manufacture any product that competes with OxyContin®. Instead, Depomed licensed its patents to Mallinckrodt, which further weighs against the need for injunctive relief. *Paice LLC v. Toyota Motor Corp.*, 2006 U.S. Dist. LEXIS 61600, *6-7 (E.D. Tex. Aug. 16, 2006) (no injunction warranted where patentee did not manufacture products to compete with those of the alleged infringer but rather was "geared toward licensing its technology") (Ex. F).

### C. Depomed Fails To Address The Remaining Factors, Which Further Support The Magistrate Judge's Decision

Finally, here and in its September 22 request to Judge Bongiovanni to lift the stay, Depomed failed to address the remaining two factors of the three-factor test for granting a stay. In the absence of any effort by Depomed to even address these basic showings, let alone a change in facts or circumstances from the original stay order, Judge Bongiovanni was well within her broad discretion to continue the stay. Depomed's failure to even mention these factors is perhaps understandable: They, too, support the Magistrate Judge's exercise of her broad discretion to continue the stay.

#### 1. The Stay May Simplify The Issues And The Trial Of The Case

As discussed in Purdue's September 24 letter, the continued stay avoids wasting judicial resources, because the Federal Circuit's decision may simplify the issues and the trial of this

11

case. Cancellation of any of the patent claims would moot Depomed's infringement contentions with regard to those claims. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot."); *Ultratec, Inc. v. Sorenson Communs., Inc.*, 2015 U.S. Dist. LEXIS 62561, *3, 11 (W.D. Wis. May 13, 2015) ("[A] stay is warranted pending appeal of the *inter partes* review decisions because final cancellation of the asserted claims would moot all of plaintiffs' infringement claims and avoid wasting judicial resources.") (Ex. G). District courts have granted stays pending appeal where the PTAB found claims patentable over the prior art of record. *See Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc.*, 2015 U.S. Dist. LEXIS 12693, *14-15 (N.D. Cal. Feb. 2, 2015) (staying action pending the final exhaustion of the IPR proceedings, including appeals to the Federal Circuit, even where the PTAB found one of the patent's claims valid over the prior art) (Ex. H). Furthermore, regardless of the outcome of the appeal, this Court may benefit from the Federal Circuit's analysis of the issues.[6]

### 2. Discovery Is At Its Early Stages And No Trial Date Has Been Set

When the Magistrate Judge initially ordered the stay of discovery in February 2014, completion of fact discovery was at least five and a half months away. As indicated in Judge

---

[6] Depomed purports to predict that Purdue will not prevail on appeal because the PTAB relied on *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007), to support its decision. (D.I. 109-1 at 8.) Purdue does not seek to "reverse this settled legal precedent," as Depomed contends. (D.I. 109-1 at 8.) The PTAB found that Purdue "has established that each limitation" of each of the independent claims in the '475 and '280 patents "was known in the art, as evidenced by the teachings" of the asserted prior-art references. On appeal, Purdue submits that the PTAB committed legal error by misapplying the standards set forth in *KSR* when analyzing the motivation to combine the prior art references. *Smith & Nephew, Inc. v. Rea*, 721 F.3d 1371, 1380 (Fed. Cir. 2013) (reversing determination of non-obviousness when Board made correct factual findings but committed legal errors in applying obviousness standard). There is no dispute that if Purdue is successful, the appeal will simplify (and likely eliminate) many issues for trial in this case.

12

Bongiovanni's July 2014 order staying the case, "only document discovery has been exchanged; no depositions have been taken.  Further, a *Markman* hearing has not been held.  In fact the claim construction process has not yet begun.  In addition, expert discovery still needs to take place, dispositive motions remain to be filed and a trial date has not been set."  (D.I. 89 at 12-13.)  The Court determined that "[u]nder these circumstances…a stay will promote judicial economy and efficiency by maximizing the use of the Court's and the parties' resources."  (D.I. 89 at 13.)  Thus, the Court found that "the stage of proceedings weighs in favor of granting the requested stay."  (D.I. 89 at 12.)  None of these facts has changed in the interim.  Accordingly, this factor also weighs in favor of a stay.

## IV.   CONCLUSION

For the reasons set forth above, Purdue respectfully requests that the Court affirm Judge Bongiovanni's well-reasoned order continuing the stay pending the Federal Circuit's decision on appeal.

Dated:  October 19, 2015

Respectfully submitted,

CONNELL FOLEY LLP

*s/ Liza M. Walsh*
Liza M. Walsh
Eleonore Ofosu-Antwi
One Newark Center
1085 Raymond Blvd., 19th Floor
Newark, New Jersey 07102
(973) 757-1100
lwalsh@connellfoley.com
eofosuantwi@connellfoley.com

OF COUNSEL:
JONES DAY
John J. Normile

13

        Kelsey I. Nix
        Gasper J. LaRosa
        222 East 41st Street
        New York, New York  10017
        (212) 326-3777

*Attorneys for Defendants and
Counterclaim-Plaintiffs
Purdue Pharma L.P., The P.F.
Laboratories, Inc., and Purdue
Pharmaceuticals L.P.*