**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEPOMED, INC. : | |
| : | CIVIL ACTION NO. 13-571 (MLC) |
| Plaintiff, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| PURDUE PHARMA L.P., et al., : | |
| : | |
| Defendants. : | |

**COOPER, District Judge**

This matter comes before the Court on appeal pursuant to Fed. R. Civ. P. 72 and L. Civ. R. 72.1(c) of plaintiff Depomed, Inc. ("Depomed"). Depomed appeals from the Magistrate Judge's August 16, 2016 Letter Order. (See dkt. 176, 8-16-16 Magis. J. Letter Order (the "Magistrate Judge's Decision"); dkt. 177, Depomed Notice of Appeal.)[1] For the reasons set forth herein, the Magistrate Judge's Decision is affirmed.

**BACKGROUND**

**I.    Discovery History**

Depomed sought the assistance of the Magistrate Judge in resolving a discovery dispute, requesting that the Magistrate Judge, *inter alia*, order defendants Purdue Phama L.P., P.F. Laboratories, Inc., and Purdue Pharmaceuticals L.P. (collectively "Purdue") to produce

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

1

relevant documents in response to Depomed's Request for Production No. 47.[2] (Dkt. 138.) Depomed argued that the deposition and trial testimony of Purdue employees in multiple prior and pending Hatch-Waxman litigations involving the OxyContin® product is likely to contain information relevant to the present litigation. (Dkt. 138 at 4-6.) Depomed also argued that Purdue should be required to produce responsive deposition and trial transcripts in fairness to Depomed, as Depomed had already produced "deposition transcripts, discovery responses, invalidity contentions, and claim construction briefing regarding the Patents-in-Suit from prior litigations, outside of third party confidential information." (Id. at 6.)

Purdue opposed Depomed's request, arguing that the information Depomed sought was irrelevant and that the production of such information would be unduly burdensome and disproportionate to the needs of the present litigation. (Dkt. 144 at 3.) Purdue explained that it had previously prosecuted twenty-three (23) cases against numerous generic companies for infringement and that those cases "involved different products and 10 different patents that are irrelevant to the issues in this case." (Id.) Purdue also argued that its similar discovery requests to Depomed were limited to the patents-in-suit. (Id.)

The Magistrate Judge directed the parties to submit additional informal letter briefing regarding the relevance of the requested information. (See dkt. 176 at 1.)

---

[2] Request for Production No. 47 seeks the production of "All pleadings, written discovery, expert reports, briefing, deposition testimony, and hearing transcripts regarding the controlled release method of OxyContin®, the formulation of OxyContin®, the sales of OxyContin®, the out-licensing or in-licensing of intellectual property for OxyContin® and the benefits and commercial success of OxyContin®, in prior litigations or proceedings." (Dkt. 138 at 5-6, n.4.) Depomed narrowed the scope of Request for Production No. 47 to "seek the production of deposition and trial transcripts rather than all documents from prior and pending litigations." (Id.)

2

In response to the Magistrate Judge's request for additional briefing, Depomed argued that Purdue's prior litigations include Hatch-Waxman cases "involving the accused product OxyContin®," and that there "is a very high probability" that Purdue produced witnesses to testify on issues relevant to the present litigation, such as "how the drug in OxyContin® is released over time," "the degree of swelling of OxyContin®," and "how OxyContin® remains intact over time." (Dkt. 172 at 1-2.) To support this argument, Depomed pointed to information discussed in the specifications of U.S. Pat. Nos. 7,674,799 ("the '799 patent") and 8,114,383 ("the '383 patent"). (Id.) Depomed also argued that "Purdue has likely produced witnesses in prior litigations who testified regarding the extent to which the infringer (here Purdue) has made use of the invention, the value of such use, the benefits of the controlled release delivery system used in OxyContin®, and the commercial success of OxyContin®." (Id. at 2.) To support this argument, Depomed noted that: (1) Purdue previously offered to produce transcripts of one employee, Mr. Mannion (Purdue's Sr. Director of Pharmaceutics); (2) an inventor of several of Purdue's previously litigated patents is designated as a 30(b)(6) witness in this case; and (3) Mr. Gasdia, Purdue's Vice President for Sales and Marketing, is designated as a Rule 30(b)(6) witness in this case and previously testified in a 2013 trial. (Id.) Depomed again argued that Purdue should be required to produce deposition and trial transcripts as a matter of fairness in view of Depomed's production containing similar information. (Id. at 3).

In response, Purdue argued that the patents-in-suit in the present litigation were not litigated in Purdue's twenty-three (23) previous cases it prosecuted against ten (10) generic companies. (Dkt. 175 at 1.) Purdue explained that its previous litigations concerned "whether

3

proposed generic versions of OxyContin® infringe ten (10) different patents owned and/or licensed by Purdue, and the validity of those patents." (Id.)  Purdue further argued that the patents cited by Depomed to support its relevance argument, i.e., the '799 patent and the '383 patent, were irrelevant because those patents focused on technology that is not at issue in the present litigation.  (See id. at 1-2.)  Purdue also noted that the prior litigations and testimony of Mr. Gasdia did not focus on Depomed's patents or the value of Depomed's invention. (Id. at 2.)

Purdue again argued that "fairness does not support granting the discovery that Depomed requests" because its previous discovery requests pertained to the patents-in-suit. (Id.)

## II. The Magistrate Judge's Decision

On August 16, 2016, the Magistrate Judged denied Depomed's request that the Court order Purdue to produce relevant documents in response to Depomed's Request for Production No. 47.  (See dkt. 176.)  Specifically, the Magistrate Judge held:

> The Court is unpersuaded by Plaintiff's arguments.  In this regard, the Court finds that Plaintiff has failed to support either its assertions concerning the "very high probability" that Defendants have produced witnesses to "testify regarding characteristics of OxyContin® relevant to key infringement issues here," or its contentions regarding the likelihood that witnesses from prior litigations would have testified regarding the use and value of the invention at issue.  As Defendants note, the patents asserted by Plaintiff here were not litigated in the prior cases involving Purdue.  "Rather the dispute in those cases was over whether proposed generic versions of OxyContin® infringe ten (10) different patents owned and/or licensed by Purdue, and the validity of those patents." (Letter from Liza M. Walsh to Hon. Tonianne J. Bongiovanni of 7/29/2016 at 1).  Further, with respect to Plaintiff's fairness argument, the Court note that the prior litigations from which Plaintiff produced information all involved the same patents being asserted here.  Under these circumstances, the Court finds that the

4

information requested in RFP 47, even as narrowed, is not relevant.  Therefore, Defendants need not produce same.

(Id. at 2-3.)

### III. Appeal From the Magistrate Judge's Decision

On August 22, 2016, Depomed filed this appeal from the Magistrate Judge's Decision. (See dkt. 177.)

#### A. Depomed's Arguments in Support of Appeal

On appeal, Depomed argues that the Magistrate Judge's Decision, denying Depomed's request that the Court order Purdue to produce relevant documents in response to Depomed's Request for Production No. 47, was clearly erroneous and misapplied the law.  (Dkt. 177-2 at 7.)  Depomed takes issue with the Magistrate Judge's findings that Depomed "failed to support either its assertions concerning the 'very high probability' that Defendants have produced witnesses to 'testify regarding characteristics of OxyContin® relevant to key infringement issues here,' or its contentions regarding the likelihood that witnesses from the prior litigations would have testified regarding the use and value of the invention at issue." (Id. at 9-10.)  In particular, Depomed argues that in its July 27, 2016 letter (dkt. 172) it explained why prior testimony from Purdue witnesses identified in the present litigation would likely contain relevant information.  (Dkt. 177-2 at 9-10.)  Depomed also argued that the Magistrate Judge overlooked the information Depomed was actually seeking, i.e., information about the product OxyContin® itself, and not the Purdue patents or proposed generics products that were the subject of prior Purdue litigation.  (Id. at 10-11.)

5

Depomed maintained its fairness argument, and also argued that (1) a denial of such discovery would be highly prejudicial because it denies Depomed impeachment opportunities, and (2) that the information it seeks could not be unduly burdensome to produce. (Id.)

### B.   Purdue's Arguments in Support of Magistrate Judge's Decision

In opposition, Purdue argues that the Magistrate Judge's Decision was (1) not an abuse of the Magistrate Judge's broad discretion, (2) was not based on any clearly erroneous factual finding, and (3) was not contrary to law.  (See dkt. 181.)  In particular, Purdue argues that the patents asserted in the previous litigation concern different technologies and infringement issues than the patents-in-suit asserted in the present litigation. (Id. at 7-9.)  Purdue also argues that the prior testimony of an inventor of a previously litigated patent and the prior testimony of Purdue's Vice President for Sales and Marketing, both of whom have been designated as Rule 30(b)(6) witnesses in the present litigation, are not necessarily relevant due to the differing technology and infringement issues of those prior litigations.  (Id. at 8-9.)  Purdue again argued that fairness does not dictate a different result, as its similar discovery requests were limited to the patents-in-suit in the present litigation.  (Id. at 9-10.)

Purdue further argues that Depomed's argument that the Magistrate Judge's Decision was contrary to law is unsupported as Depomed did not "identify any statute, case law, local rule or other applicable law" that the Magistrate Judge "misinterpreted or misapplied." (Id. at 10.)

**STANDARD OF REVIEW**

Magistrate Judges may hear and determine any non-dispositive pre-trial matter pending before the court pursuant to 28 U.S.C. § 636(b)(1)(A).  A party may appeal a Magistrate Judge's non-dispositive order within 14 days of being served with a copy of the order.  Fed. R. Civ. P. 72; L. Civ. R. 72.1(c).  The district court will only reverse a Magistrate Judge's order on a pretrial matter if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Marks v. Struble, 347 F.Supp.2d 136, 149 (D.N.J. 2004) (citation and alteration omitted).  Mere disagreement with the Magistrate Judge's findings is insufficient for reversal, and a District Judge may not consider evidence not before the Magistrate Judge. See Haines v. Liggett Grp. Inc., 975 F.2d 81, 91 (3d Cir. 1992); Andrews v. Goodyear Tire & Rubber Co., 191 F.R.D. 59, 68 (D.N.J. 2000). A ruling of a Magistrate Judge is "contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law." Marks, 347 F.Supp.2d at 149.

The appellant bears the burden of demonstrating that the Magistrate Judge's decision meets the standard for reversal. Exxon Corp. v. Halcon Shipping Co., 156 F.R.D. 589, 591 (D.N.J. 1994).  When an appellant "seeks review of a matter within the purview of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the 'abuse of discretion' standard, must be applied." Koninklijke Philips Elec. N.V. v. Hunt Control Sys., Inc., No. 11-3684, 2014 WL 5798109, at *2 (D.N.J. 2014) (quoting Salamone v. Carter's Retail, Inc., No. 09-5856, 2012 WL 821494, at *4 (D.N.J. 2012)).  Under this standard, the

Magistrate Judge's discovery decision is entitled to great deference and is reversed only upon an abuse of discretion. Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. 2010) (citing Kresefsky v. Panasonic Communs. & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996)); see also C.G. v. Winslow Twp. Bd. of Educ., No. 13-6278, 2015 WL 3794578, at *2 (D.N.J. June 17, 2015) ("[S]ince the magistrate judge is fully involved with the facts and record of the case, district judges give significant deference to a magistrate judge's discovery rulings." (citations omitted)).

## DISCUSSION

As an initial matter, Depomed's exhibits 7-11 attached to Depomed's Reply Brief (see dkt. 185) and the associated argument were not presented to the Magistrate Judge, and therefore cannot be taken into consideration on the district court's review. See Celgene Corp. v. Natco Pharma Ltd., No. 10-5197, 2015 WL 4138982, at *2 (D.N.J. July 9, 2015)("[A] district court may not consider any evidence which was not presented to the magistrate judge." (citations omitted)). The portions of Purdue's Sur-Reply (see dkt. 205) and Depomed's Reply to Purdue's Sur-Reply (see dkt. 210) addressing exhibits and arguments outside of the reviewable record similarly cannot be taken into consideration. See id. The Court has reviewed the parties' papers that are relevant to the appeal and concludes that Depomed has not met its burden of demonstrating that the Magistrate Judge's Decision was "contrary to law" or "clearly erroneous."[3]

---

[3] Even if the court were to apply the "abuse of discretion" standard of review, Depomed would be unable to meet this higher more deferential standard.

The Court is not persuaded that the Magistrate Judge's factual finding, that Depomed failed to support its assertions or contentions regarding the relevance of the prior testimony of Purdue witnesses, was clearly erroneous. The Magistrate Judge's Decision noted that the patents asserted by the Plaintiff were not litigated in the prior cases involving Purdue. (See dkt. 176 at 2.) Rather, the prior litigation involved whether proposed generic versions of OxyContin® infringed ten (10) different patents owned and/or licensed by Purdue. (Id.) The fact that an inventor of several of Purdue's patents in dispute in prior litigation has been designated as a Rule 30(b)(6) witness in this case with respect to the "characteristics and formulations of OxyContin®" does not necessarily mean that there is a "very high probability" that witness previously testified regarding characteristics of OxyContin® relevant to <u>key infringement issues here</u>. This is because the patents-in-suit were not at issue in those previous litigations. Moreover, prior testimony relating to the debut of OxyContin® not being marked by "fanfare" does not necessarily mean that there is a "very high probability" that witness would have testified regarding the use and value of the <u>invention at issue here</u>. Again, this is because the patents-in-suit were not at issue in those previous litigations.

This Court is also not persuaded that the Magistrate Judge overlooked or misinterpreted the extent of the information Depomed is "actually seeking." There is no indication the Magistrate Judge overlooked or misinterpreted the scope of Depomed's Request for Production No. 47, as restated verbatim in the Magistrate Judge's Decision. (See dkt. 176 at 1.)

The Court also agrees with the Magistrate Judge's Opinion with respect to Depomed's fairness argument. Contrary to the information Depomed seeks, the information Purdue had requested was directly related to the patents-in-suit in this litigation.

The Court is not "left with the definite and firm conviction that a mistake has been committed," and therefore the Magistrate Judge's Decision is not "clearly erroneous." See Marks, 347 F.Supp.2d at 149. The Magistrate Judge's Decision is also not "contrary to law" because the Magistrate Judge did not misinterpret or misapply the law, see id., nor did the Magistrate Judge overlook any law or fact. L. Civ. R. 72.1(c)(1)(A).

## CONCLUSION

For the reasons stated above, the Court will affirm the Magistrate Judge's Decision. The Court will issue an appropriate Order.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:**  October 14, 2016