# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DEPOMED, INC., | : | |
| | : | Civil Action No. 13-571 (MLC) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| PURDUE PHARMA L.P., THE P.F. | : | |
| LABORATORIES, INC., AND PURDUE | : | |
| PHARMACEUTICALS L.P., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COOPER, District Judge**

This matter comes before the Court upon Plaintiff Depomed, Inc.'s ("Depomed")
motion to dismiss Defendants Purdue Pharma L.P, The P.F. Laboratories, Inc., and
Purdue Pharmaceuticals L.P.'s (collectively, "Purdue") third counterclaim (inequitable
conduct) under Fed. R. Civ. P. 12(b)(6) and motion to strike Purdue's sixth (inequitable
conduct), seventh (unclean hands), and eight (patent misuse) affirmative defenses under
Fed. R. Civ. P. 12(f). (Dkt. 262.)[1] Purdue opposes the motions. The Court has
considered the parties' submissions, (dkt. 262, dkt. 263, dkt. 265, dkt. 270), and decides
the motions without oral argument pursuant to Local Civil Rule 78.1. For the reasons
discussed below, Depomed's motions are granted in part and denied in part.

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System
("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference
ECF pagination.

## I. BACKGROUND

On February 1, 2017, Depomed filed a Second Amended Complaint ("SAC") alleging that Purdue's "commercial manufacture, use, offer to sell, and/or sale of OxyContin®" willfully and deliberately infringes U.S. Patent Nos. 6,340,475 ("the '475 Patent") and 6,635,280 ("the '280 Patent") (together, "the patents-in-suit"). (Dkt. 259.) In response, Purdue filed an Answer and Counterclaims. (Dkt. 260) Therein, Purdue included allegations of inequitable conduct.[2]

Purdue's allegations of inequitable conduct are based on several different alleged misrepresentations and omissions made by an inventor of the patents-in-suit, Jenny Louie Helm ("Inventor Helm"), and Depomed's counsel during related *inter partes* review ("IPR") proceedings of the patents-in-suit.[3] Purdue alleges that Inventor Helm and Depomed's counsel made misrepresentations and omissions that violated (1) their duty of candor and good faith in dealing with the U.S. Patent and Trademark Office ("USPTO")

---

[2] Prior to filing its Answer and Counterclaims to the SAC, Purdue moved to amend its earlier answer to add allegations of inequitable conduct and unclean hands. (Dkt. 224.) Depomed opposed that motion. (Dkt. 240.) The Court concluded that Purdue was at liberty to add its allegations in response to the SAC. (Dkt. 282.) Accordingly, Purdue's motion to amend was dismissed as moot. (Id.)

[3] The related IPR proceedings are IPR2014-00377, IPR2014-00378, and IPR2014-00379. Purdue filed three petitions for IPR challenging the '475 and '280 Patents. The PTAB instituted IPR review in all three proceedings on grounds of anticipation and/or obviousness. Depomed submitted Patent Owner Responses ("PORs") in each of the instituted proceedings. Each POR included the supporting declaration of Inventor Helm ("the Helm Declaration").

Patent Trial and Appeal Board ("PTAB"), and (2) their duty to disclose prior inconsistent statements during the IPR proceeding.[4] (Id. at 11-12.)

Purdue advances three theories in support of its inequitable conduct defense: (1) Inventor Helm and Depomed's counsel misrepresented material information with the specific intent to deceive the PTO; (2) Inventor Helm and Depomed's counsel omitted material information with the specific intent to deceive the PTO; and (3) Inventor Helm and Depomed's counsel failed to produce prior inconsistent interrogatory responses and a sworn verification during the IPR proceedings. We summarize those theories below.

## A.    Material Misrepresentations

Purdue alleges that Inventor Helm and Depomed "intentionally misrepresented that it took [Inventor Helm] at least three years of research to develop an embodiment of the claimed invention," when in fact at least one embodiment of the claimed invention was conceived and reduced to practice no later than June 1993 on Inventor Helm's first

---

[4] 37 C.F.R. § 42.11 provides that "parties and individuals" involved in proceedings before the PTAB "have a duty of candor and good faith to the Office during the course of a proceeding."

37 C.F.R. § 42.51(b)(1)(iii) provides that

> Unless previously served, a party must serve relevant information that is inconsistent with a position advanced by the party during the proceeding concurrent with the filing of the documents or things that contains the inconsistency. This requirement does not make discoverable anything otherwise protected by legally recognized privileges such as attorney-client or attorney work product. This requirement extends to inventors, corporate officers, and persons involved in the preparation or filing of the documents or things.

attempt to formulate a controlled release dosage form.  (Id. at 13.)[5]  Purdue alleges that

these misrepresentations "were intended to mislead the PTAB into concluding that the

alleged invention would not have been obvious in view of the art at the time the patent

application was filed in March 1997."  (Id. at 13.)  Purdue alleges that these

misrepresentations "are highly material insofar as the PTAB specifically relied on those

statements in its Final Written Decisions" and but for these misrepresentations, the PTAB

would not have upheld the validity of the patents-in-suit.  (Id. at 14.)

Purdue identifies numerous paragraphs in the Helm Declaration that it alleges

misrepresent the time and research necessary to arrive at an embodiment falling within

the scope of the claims.  (See id. at 14-20.)  For example, Purdue identifies paragraph 24

of the Helm Declaration, which states, in part:

> The inventions in the '475 and '280 Patents was [sic] the result
> of several years of research, manipulation of different
> formulation variables in the laboratory, numerous dissolution
> experiments, and repeated testing to achieve a system that
> accomplished slow release of drug by diffusion over a
> particular length of time while keeping the polymeric matrix
> substantially intact.

(Id. at 63.)  Purdue also identifies Inventor Helm's statements disagreeing with Purdue's

expert's deposition testimony pertaining to the issue of obviousness:

> I have been informed that Purdue's expert testified at his
> deposition that the inventions of the '475 and '280 Patents

---

[5]  Specifically, Purdue alleges that at least one Captopril formulation that was an embodiment of the claims of the '475 and '280 Patents was reduced to practice no later than June 16, 1993.  (Dkt. 260 at 16.)  Captopril is a drug of high solubility to which [the inventions of the patents-in-suit are] applicable.  See, e.g., '475 Pat., col. 7, ll. 24-33; col. 13, ll. 9-63.  Purdue alleges that experiments on formulations containing Captopril were performed by Inventor Helm on June 17, 1993, as is evidenced by her laboratory notebook.  (Dkt. 260 at 16.)

could have been created within "a week" in 1997. I completely disagree. There was very little information regarding swelling polymers that were designed to remain substantially intact as of the mid-1990's. It took me three years testing various polymers with guidance of Dr. Shell to achieve the Captopril formulation that contained the aspects of the claims of the '475 and '280 Patents.

(Id. at 62.) Purdue further identifies similar statements and arguments that Depomed's counsel made to the PTAB in its PORs and during oral argument. (See id. at 20-22.)

Purdue alleges that Inventor Helm and Depomed's counsel knew the statements they made to the PTAB were false because of the contrary information in their possession, such as Inventor Helm's laboratory notebook. (See id. at 22-23, 26-27.) Purdue alleges that this demonstrates their specific intent to deceive the PTAB. (Id. at 25.)

**B.      Material Omissions**

Purdue's second basis for inequitable conduct is similar to its first. Purdue alleges that in addition to misrepresenting the time it took Inventor Helm to reduce to practice an embodiment of the invention, the independent act of Depomed in withholding the fact that Inventor Helm reduced to practice an embodiment of the invention in June 1993 constitutes inequitable conduct. Specifically, Purdue alleges that Inventor Helm and Depomed's counsel "[omitted] the fact that [she] had conceived of and reduced to practice an embodiment of the claimed invention by 1993 – on the first try and within months of starting work at Depomed, and with no prior experience formulating solid dosage forms." (Id. at 19.) Purdue alleges that Inventor Helm and Depomed's counsel

5

"had ample time and opportunity for a comprehensive disclosure of the facts regarding the conception and reduction to practice of the embodiments of the claims, but deliberately chose not to disclose those facts, such as that a Captopril formulation within the scope of the asserted claims was reduced to practice by 1993." (Id. at 28.)

### C. Production of Prior Inconsistent Statements During the IPR Proceedings

Purdue's third theory is that Inventor Helm and Depomed's counsel failed to produce a prior inconsistent interrogatory response and a sworn verification "for use during the IPR proceedings." (Id. at 27.) The interrogatory response and sworn verification are from a prior litigation, Depomed, Inc. v. Ivax Corp., No. 06-0100 (N.D. Cal.) ("the Ivax Case"). The interrogatory response indicates that claims 1, 2, 3, 8, 9, 13, and 14 of the '475 Patent and claims 1, 2, 3, 8, 9, 13, 14, 45, and 46 of the '280 Patent were conceived and reduced to practice "no later than June 16, 1993." (Id. at 120-121.)[6] Purdue alleges that the response is inconsistent with the statements Depomed and Inventor Helm made to the PTAB concerning the time necessary to arrive at an embodiment falling within the scope of the claims. (Id. at 27-28.)

Purdue explains that the response and verification were already in its possession, as these documents were "produced to Purdue prior to the stay in this case, at the time

---

[6] Depomed informs us that the interrogatory responses referenced by Purdue were amended in the Ivax case to indicate that "[t]he inventions of the following claims were conceived by John W. Shell and Jennie Louie-Helm no later than April 12, 1996: Claims 1, 2, 3, 4, 8, 9, 13, 14, 45, 46, 61, 62, 63, 64, 65, 68, 69, 70, 71, 72, 73, 74, 75, 79, 80, 81, 82, 83, 84, 85, and 86 of the '475 patent; claims 1, 2, 3, 4, 8, 9, 13, 14, 45, 46, 47, 48, 49, 50, 51 52, and 53 of the '280 patent." (See dkt. 263 at 20-21; see also dkt. 262-3.)

[Depomed] was involved in preparing the Helm Declaration and the PORs for submission

in the IPRs," but contends Depomed violated its duty under 37 C.F.R. § 42.51(b)(1)(iii)

because these documents were not produced <u>during</u> the IPR proceedings.  (<u>Id.</u> at 27.)

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a

counterclaim if the counterclaimant "fail[s] to state a claim upon which relief can be

granted[.]"  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6), a district court is required to "accept all factual allegations as true,

construe the [counterclaim] in the light most favorable to the [counterclaimant], and

determine whether, under any reasonable reading of the [counterclaim], the

[counterclaimant] may be entitled to relief."  <u>Phillips v. Cnty of Allegheny</u>, 515 F.3d 224,

233 (3d Cir. 2008) (internal citation and quotations omitted).  Stated differently, "a

[counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The inquiry is not whether

[a counterclaimant] will ultimately prevail in a trial on the merits, but whether [he or she]

should be afforded an opportunity to offer evidence in support of [his or her] claims."  <u>In</u>

<u>re Rockefeller Ctr. Props., Inc.</u>, 311 F.3d 198,215 (3d Cir. 2002).

A claim of patent unenforceability premised upon inequitable conduct is a claim

sounding in fraud.  Under Rule 9(b), fraud is a clear exception to the otherwise broad

notice-pleading standards.  A party alleging inequitable conduct, therefore, must plead

with particularity those facts which support the claim that the patent holder acted

fraudulently before the PTO.  Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312,

1326 (Fed. Cir. 2009).

## 2. Pleading Inequitable Conduct

To plead inequitable conduct with the requisite "particularity" under Rule 9(b),

"the pleading must identify the specific who, what, when, where, and how of the material

misrepresentation or omission committed before the PTO."  Exergen, 575 F.3d at 1328;

see also Fresenius Kabi USA, LLC v. Fera Pharm., LLC, No. 15-3654, 2016 WL

5348866, at *10 (D.N.J. Sept. 23, 2016).  "A pleading that simply avers the substantive

elements of inequitable conduct, without setting forth the particularized factual bases for

the allegation, does not satisfy Rule 9(b)."  Exergen, 575 F.3d at 1326-27.

At the pleading stage, the proponent of the inequitable conduct theory need only

plead facts supporting a reasonable inference that a specific individual "(1) knew of the

withheld material information or of the falsity of the material misrepresentation, and (2)

withheld or misrepresented this information with a specific intent to deceive the PTO."

Id. at 1328-29.  The standards for pleading a claim of inequitable conduct are more

lenient than the standards for obtaining relief.  At the pleadings stage, deceptive intent

must be a reasonable inference; prevailing on an inequitable conduct claim requires a

showing that deceptive intent is the single most reasonable inference.  Id. at 1329 n.5.  "A

reasonable inference is one that is plausible and that flows logically from the facts alleged

. . . ."  Id.

### 3.     Motion to Strike Under Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides in pertinent part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The district court's decision whether to grant a motion to strike under Rule 12(f) is discretionary. FTC v. Hope Now Modifications, LLC, No. 09-1204, 2011 WL 883202 at *2 (D.N.J. Mar. 10, 2011) (citing Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 217 (D.N.J. 1993)).

"[M]otions to strike 'serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent litigating issues which would not affect the outcome of the case.'" United States v. Kramer, 757 F. Supp. 397, 410 (D.N.J. 1991) (citation omitted). However, the Third Circuit has instructed district courts to deny a motion to strike a defense "unless the insufficiency of the defense is clearly apparent." Cipollone v. Liggett Grp, Inc., 789 F.2d 181, 188 (3d Cir. 1986). "[O]n the basis of the pleadings alone, 'an affirmative defense can be stricken only if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts.'" Hope Now Modifications, 2011 WL 883202 at *2 (quoting Tonka, 836 F. Supp. at 218).

### B.     Analysis

#### 1.     Purdue's First and Second Inequitable Conduct Theories: Material Misrepresentations and Omissions

Depomed argues that Purdue's inequitable conduct counterclaim should be dismissed under Rule 12(b)(6) because Purdue fails to satisfy the heightened pleading

requirements of Rule 9(b). Specifically, Depomed argues that Purdue fails to set forth any factual basis for its allegation that a misrepresentation or omission was made to the PTAB, let alone a factual basis that an alleged misrepresentation or omission was made with the requisite specific intent to deceive the PTAB. (Dkt. 263 at 6, 17.)

Depomed takes the position that Purdue failed to plead that a knowing misrepresentation or omission occurred. (See id. at 17-18.) Depomed admits that one example within the claimed range of drug-to-polymer ratios of the patents-in-suit was achieved in 1993, but disputes that Inventor Helm's testimony that the "claimed invention" was not conceived for another three years was a misrepresentation. (Id. at 18.) Depomed's position is that the "claimed invention" includes "the full range of drug-to-polymer ratios," not the single embodiment achieved in 1993. (Id. at 18-19.) Depomed argues that no legal conception of the invention occurred in 1993, because all of the limitations of the invention, i.e., the full range of the ratios of drug-to-polymer, were not yet conceived. (Id. at 19.) Thus, according to Depomed, Inventor Helm and counsel's statements regarding the length of time it took to conceive the "claimed invention" were not misrepresentations and have been consistent.

Depomed also argues that because Purdue's pleadings lack the necessary facts that would allow a Court to reasonably infer that a misrepresentation occurred in the first instance, Purdue's pleadings cannot support an allegation of a knowing misrepresentation or omission. (Id. at 22.) Additionally, Depomed argues that these facts cannot support a reasonable inference that there was intent to deceive the PTAB. (See id. at 23-24.)

Purdue argues that Depomed is conflating the issues of "when the ***full scope*** of the patent claims, as opposed to an ***embodiment*** of the alleged invention, was conceived and reduced to practice." (Dkt. 265 at 26 (emphasis in original).) Purdue asserts that its inequitable conduct counterclaim does not rest on the theory that the date of conception of the full scope of the claims was not April 12, 1996. (<u>Id.</u>) Purdue argues that "the issue of 'obviousness' focuses on whether any *single* embodiment of the challenged claims—not necessarily their full scope—would have been obvious to a person of ordinary skill." (<u>Id.</u> (emphasis in original).) Thus, Purdue argues that "Depomed and its counsel knowingly withheld from the PTAB and misrepresented that an embodiment of the claimed invention was reduced to practice as early as 1993 in an effort to avoid an obvious determination." (<u>Id.</u>)

Purdue also argues that Depomed's argument—that Inventor Helm has consistently testified in this case, before the PTAB, and in prior interrogatories, that reduction to practice of the full scope of the invention occurred in April 1996—is a red herring. (<u>Id.</u> at 27.) Purdue argues that reduction to practice of the full scope of the invention was not at issue in the PTAB proceedings and that Inventor Helm's declaration "solely concerned 'obviousness.'" (<u>Id.</u> at 27-29.)[7] Purdue argues that the wording used by Depomed and Inventor Helm (i.e., "aspects of the claims") was meant to mislead the PTAB about whether an embodiment within the invention was conceived and reduced to practice. (<u>Id.</u> at 27.)

---

[7] Purdue notes that the Helm Declaration does not include the words "full scope," "conception," or "reduction to practice." (<u>Id.</u>)

Depomed, however, argues that any contention that they should have informed the PTAB that Inventor Helm experimented on a formulation that purportedly falls within the scope of the claims is legally flawed.  (Dkt. 270 at 13.)  Depomed argues that an inventor's work on early formulations that are "later discovered to fall within the scope of the claimed invention" are not prior art against the invention.  (Id.)  Depomed argues that Inventor Helm's early formulations were not publically disclosed, and therefore not relevant to the PTAB's obviousness inquiry.  (Id.)

With respect to Purdue's sixth and seventh affirmative defenses of inequitable conduct and unclean hands, Depomed argues that these affirmative defenses rise and fall with Purdue's counterclaim because they incorporate the same factual allegations.  (See dkt. 263 at 25.)  Accordingly, Depomed asks us to strike these affirmative defenses as futile under Rule 12(f).  Purdue argues that they are sufficiently plead because they incorporate the same factual allegations as the inequitable conduct counterclaim. (Dkt. 265 at 30.)

After reviewing Purdue's Answer and Counterclaims, including the accompanying exhibits, we find that Purdue has provided sufficient factual details to meet the particularity requirements of Rule 9(b).  With respect to Purdue's first basis for inequitable conduct—that Depomed and Inventor Helm made material misrepresentations to the PTAB during the related IPR proceedings—we are persuaded that Purdue's pleadings disclose the specific "who, what, when, where, and how" as required by Exergen.

Purdue has pleaded that (1) Depomed's counsel and Inventor Helm "intentionally misrepresented that it took [Inventor Helm] at least three years of research to develop **an embodiment** of the claimed invention," (dkt. 260 at 13 (emphasis added)); (2) Depomed and Inventor Helm knew the statements they made to the PTAB were false because of the contrary information in their possession, such as Inventor Helm's laboratory notebook, that reveals the conception and reduction to practice of an embodiment of the claimed invention in 1993, (id. at 17-22, 27); (3) Depomed and Inventor Helm misrepresented this information "to mislead the PTAB into concluding that the alleged invention would not have been obvious in view of the art at the time the patent application was filed in March 1997," (id. at 13, 23-24); and (4) that but for Depomed's misrepresentations, the PTAB would not have upheld the patentability of the patents, (id. at 14, 23-24). At the pleading stage, we find that Purdue has done what is required to survive a motion to dismiss. Purdue has pleaded facts supporting a reasonable inference that a specific individual "(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." Exergen, 575 F.3d at 1328-29.

We are unpersuaded by Depomed's arguments to the contrary. Depomed's first argument—that a material misrepresentation or omission did not occur—is a factual disagreement as to whether counsel's statements and the statements in the Helm Declaration were material misrepresentations or omissions. A factual disagreement cannot support dismissal of Purdue's counterclaim at the pleading stage. See Bayer CropScience AG v. Dow Agrosciences LLC, No. 10-1045, 2012 U.S. Dist. LEXIS 51913

at *10-11 (D. Del. Apr. 12, 2012) (noting that the Court may not weigh the facts and address the merits of the averments at the motion to dismiss stage). Moreover, while the statements in an affidavit may be literally true, this alone does not immunize a party from a finding of inequitable conduct. See B.F. Goodrich Co. v. Aircraft Braking Sys. Corp., 72 F.3d 1577, 1585 (Fed. Cir. 1996) ("Truthful statements can be crafted in a misleading manner through intentional omission of particular relevant facts.").

We also reject Depomed's second argument that Purdue has failed to allege a factual basis that an alleged misrepresentation or omission was made with the requisite specific intent to deceive the PTAB. In a pleading of inequitable conduct, the facts must support a "reasonable inference" of intent. Exergen, 575 F.3d 1312 at 1328. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." Id. at n.5. Here, Purdue has alleged that the Helm declaration was offered for the purpose of refuting claims of obviousness, and more particularly, that there was no motivation to combine the references cited against the patents-in-suit (which together allegedly taught all of the elements of claim 1) with a reasonable expectation of success. The Helm declaration directly refuted Purdue's expert's claim that it would take him "a week" to come up with the claimed invention, by asserting that it took her nearly three years "to achieve the Captopril formulation that contained the aspects of the claims of the '475 and '280 Patents," without disclosing that an embodiment of the invention was reduced to practice in a relatively short period of time. Based on these allegations, it is reasonable to infer that Inventor Helm and Depomed intended to paint an incomplete or misleading picture

for the PTAB. While Purdue faces a difficult task of proving inequitable conduct, it has provided a recitation of facts that could give rise to a reasonable inference that Depomed misrepresented and/or omitted material information with the intent to deceive the PTAB.

Depomed's argument that an inventor's early formulations are not prior art against the invention misses the mark. Purdue's allegation is not that Inventor Helm's early embodiment constitutes prior art against the patents-in-suit. Rather, Purdue's argument is that Depomed misrepresented this material information which is relevant to the question of whether there is a reasonable expectation of success in combining prior art references.

With respect to Purdue's second basis for inequitable conduct—Depomed's alleged withholding of the fact that Inventor Helm reduced to practice an embodiment of the invention in June 1993—we find that Purdue's pleadings disclose the specific "who, what, when, where, and how" as required by Exergen. Our reasoning is the same as discussed above in relation to Purdue's first theory.

Therefore, we conclude that Purdue's allegations, with respect to its first and second theories for inequitable conduct, satisfy the heightened pleading requirements of Rule 9(b). We also conclude that Purdue's sixth and seventh affirmative defenses are sufficiently pleaded because they incorporate the same factual allegations as Purdue's first and second theories in its inequitable conduct counterclaim. Accordingly, we will deny Depomed's motion to dismiss Purdue's inequitable conduct counterclaim as it pertains to Purdue's first and second theories and deny Depomed's motion to strike Purdue's sixth and seventh affirmative defenses to the extent they pertain to Purdue's first and second inequitable conduct theories.

### 2.    Purdue's Third Inequitable Conduct Theory: Production of Prior Inconsistent Statements During the IPR Proceedings

With respect to Purdue's allegations that Depomed withheld the interrogatory response during the IPR proceedings, Depomed argues that the initial response was not material because it was not the response "actually relied on in the <u>Ivax</u> litigation." (<u>See</u> Dkt. 263 at 22-23.) Depomed notes that this response was amended and was no longer the operative response in that case. (<u>Id.</u> at 20; <u>see also</u> n.6, <u>supra</u>.) Depomed also argues that the representations made to the PTAB were consistent with the amended interrogatory response. (<u>Id.</u> at 20-22.) Thus, Depomed asserts that Purdue fails to allege facts that allow a reasonable inference that knowing misrepresentations or omissions were made or that there was any specific intent to deceive the PTAB. (<u>See id.</u> at 23-24.)

Purdue contends that Depomed's argument regarding the undisclosed interrogatory response being inoperative is irrelevant. (Dkt. 265 at 29.) Purdue argues that Inventor Helm confirmed at her deposition that she verified the initial interrogatory by checking her notebooks, and confirmed that she reduced to practice an embodiment by June of 1993. (<u>Id.</u>) Purdue argues that the initial responses, although not operative in the <u>Ivax</u> litigation, serve as evidence that an embodiment was conceived and reduced to practice in 1993. (<u>Id.</u>) Thus, the hallmark of Purdue's argument related to nondisclosure is that Depomed failed to notify the PTAB that a single embodiment was reduced to practice in 1993. This argument, however, supports Purdue's second theory of a material omission, not Purdue's theory that Depomed failed to produce inconsistent statements to Purdue during the IPR proceedings.

With respect to Purdue's third theory of inequitable conduct— that Inventor Helm and Depomed's counsel failed to produce a prior inconsistent interrogatory response and a sworn verification for use during the IPR proceedings—we find that Purdue fails to state a claim. Without reaching Depomed's argument pertaining to whether an inoperative discovery response is material or not, we find that Purdue cannot show that the interrogatory response and sworn verification were withheld with a specific intent to deceive the USPTO.

The rule that Purdue relies on for this theory of inequitable conduct provides that:

> **Unless previously served**, a party must serve relevant information that is inconsistent with a position advanced by the party during the proceeding concurrent with the filing of the documents or things that contains the inconsistency. This requirement does not make discoverable anything otherwise protected by legally recognized privileges such as attorney-client or attorney work product. This requirement extends to inventors, corporate officers, and persons involved in the preparation or filing of the documents or things.

37 C.F.R. § 42.51(b)(1)(iii) (emphasis added). Purdue admits that Depomed "produced [the interrogatory response and sworn verification at issue] to Purdue prior to the stay in this case, at the time it was involved in preparing the Helm Declaration and the PORs for submission in the IPRs." (Dkt. 260 at 27.) Stated differently, Purdue alleges that Depomed previously served the relevant information that is allegedly inconsistent with the positions advanced in the Helm Declaration and PORs prior to the filing of those documents with the PTAB. Depomed's alleged compliance with 37 C.F.R. § 42.51(b)(1)(iii) cannot serve as the basis for a claim of inequitable conduct. Because

Purdue cannot show that the interrogatory response and verification were withheld, we will grant Depomed's motion with respect to this theory.

### 3. Purdue's Patent Misuse Defense

Depomed also moves to strike Purdue's patent misuse affirmative defense under Fed. R. Civ. P. 12(f). Patent misuse is an equitable doctrine that prevents a patentee from wrongly exploiting a patent to "acquire a monopoly not embraced in the patent." Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (quoting Transparent-Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 643 (1947)). An alleged infringer can successfully raise patent misuse as an affirmative defense by showing "that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." Windsurfing Int'l Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed. Cir. 1986) (quoting Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 343 (1971)). The Federal Circuit has cautioned that the "bringing of a lawsuit to enforce legal rights does not of itself constitute . . . patent misuse." Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1558 (Fed. Cir. 1995). However, bringing a lawsuit can be considered patent misuse if the suit was brought in bad faith or for some "improper purpose." Id.

Purdue's eighth affirmative defense for patent misuse alleges, in its entirety, that:

> The claims of the '475 patent and '280 patent are unenforceable because Depomed, by alleging infringement and seeking a permanent injunction after the expiration of the patents as set forth in paragraphs 25, 30-31, 33, 39-40 of the Second Amended Complaint, attempts to impermissibly broaden the temporal scope of the patent grant with anticompetitive effect.

(Dkt. 260 at 7.)[8]

Depomed argues that we should dismiss Purdue's patent misuse defense because Purdue failed to set forth factually supported allegations that Depomed "expanded the legal scope of exclusion under the patent grant, and actual anticompetitive effect resulted." (Dkt. 263 at 25-26.) Purdue stands by its pleadings and explains that an "anticompetitive effect will occur if Depomed succeeds in obtaining a permanent injunction against Purdue on patents that have expired, which would temporally expand the legal scope of exclusion under the patent grant." (See dkt. 265 at 30.)

The theories that Purdue puts forward are insufficient. First, Depomed is not seeking a permanent injunction after the expiration of the patents-in-suit. The temporal scope of the injunction sought in Depomed's SAC is limited to the life of the patents:

> A permanent injunction enjoining Purdue Pharma, P.F. Labs, and Purdue Pharmaceuticals, their officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them from manufacturing, using, offering to sell, or selling OxyContin® within the United States, or importing OxyContin® into the United States, **prior to the expiration of the '475 and '280 Patents, including any extension**.

(Dkt. 260 at 7 (emphasis added).)

In addition, the owners of expired patents are given six years after the expiration date of a patent to pursue infringement claims. See 35 U.S.C. § 286. The assertion of a

---

[8] The patents-in-suit expired during the pendency of the litigation in September 2016. (See dkt. 263 at 14.)

patent right provided by statute cannot serve as the basis for a claim that a patentee attempted to expand the scope of its patent in an anticompetitive manner.

Purdue does not present any additional facts or theories that could plausibly support an affirmative defense of patent misuse.  Here, we conclude that the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts. Hope Now Modifications, 2011 WL 883202 at *2.  Accordingly, we will strike Purdue's patent misuse defense.

### III. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Depomed's motion to dismiss Purdue's third counterclaim under Fed. R. Civ. P. 12(b)(6). Depomed's motion to dismiss is granted such that Purdue's theory of inequitable conduct pertaining to Inventor Helm and Depomed's counsel's failure to produce prior inconsistent interrogatory responses and a sworn verification during the IPR proceedings is stricken. Depomed's motion to dismiss is denied with respect to Purdue's first and second theories (material misrepresentations and omissions).

The Court will grant in part and deny in part Depomed's motion to strike Purdue's sixth, seventh, and eighth affirmative defenses under Fed. R. Civ. P. 12(f). Depomed's motion to strike is granted such that Purdue's eighth affirmative defense for patent misuse is stricken. Depomed's motion to strike is denied with respect to Purdue's sixth and seventh affirmative defenses to the extent they pertain to Purdue's first and second inequitable conduct theories.

The Court will issue an appropriate order.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** June 28, 2017