ROBINSON MILLER LLC
Keith J. Miller
kmiller@rwmlegal.com
Michael Gesualdo
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400

OF COUNSEL:
KRAMER LEVIN NAFTALIS & FRANKEL LLP
Paul J. Andre
Lisa Kobialka
Hannah Lee
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Mark Baghdassarian
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

*Attorneys for Plaintiff Depomed, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DEPOMED, INC., | ) | C.A. No.: 3:13-CV-00571-BRM-TJB |
| | ) | |
| Plaintiff, | ) | **DEPOMED, INC.'S OPPOSITION** |
| | ) | **TO DEFENDANTS' APPEAL** |
| v. | ) | **OF THE MAGISTRATE JUDGE'S** |
| | ) | **DECEMBER 22, 2017 ORDER** |
| PURDUE PHARMA L.P., THE P.F. | ) | **PURSUANT TO FED. R. CIV. P.** |
| LABORATORIES, INC., and PURDUE | ) | **72 AND L. CIV. R. 72.1(C)** |
| PHARMACEUTICALS L.P., | ) | |
| | ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION.................................................................................................1

II.  SUMMARY OF FACTS.....................................................................................1

    A.   The Inventors Suit Spent Years of Research to Conceive of the Invention...................................................................................................2

    B.   Depomed Has Consistently Identified 1996 As the Date of Conception................................................................................................3

    C.   Purdue's IPRs Were Unsuccessful ............................................................6

    D.   Purdue Manufactures An Inequitable Conduct Counterclaim ................10

    E.   Purdue Abused The Discovery It Was Permitted To Serve.....................12

    F.   Purdue Violated the Court's Directive to Serve Narrowly Tailored Written Deposition Questions on Depomed's Trial Counsel .................13

III. THE MAGISTRATE'S ORDER WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW...................................................18

    A.   Magistrate Judge Bongiovanni Did Not Abuse Her Discretion..............18

        1.   The Magistrate's Order Described Her Analysis .............................18

        2.   Limiting the Scope of Discovery Is Within the Court's Discretion .........................................................................................20

    B.   The *Shelton* Factors Are Not Used To Compel Further Deposition ........27

        1.   The *Shelton* Factors Address Whether A Deposition Will Take Place .........................................................................................27

        2.   Magistrate Judge Bongiovanni Correctly Concluded That The Circumstances Here Do Not Warrant Additional Live Depositions of Trial Counsel .........................................................31

3. Purdue's Continued Requests for Additional Deposition of Opposing Trial Counsel Are Made Solely To Harass Depomed and Prolong Resolution of this Litigation ........................34

C. Purdue's Alternative Request is Improper ...............................................39

IV. CONCLUSION ...............................................................................................41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcon Labs, Inc. v. Pharmacia Corp*,
    225 F. Supp. 2d 340 (S.D.N.Y. 2002) ...............................................................28

*Anderson v. Corr. Med. Servs., Inc.*,
    No. 04-3410 (GEB), 2006 WL 1644709 (D.N.J. June 6, 2006).......................21

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
    726 F.3d 1296 (Fed. Cir. 2013) ........................................................................25

*Campbell v. Keystone Aerial Surveys, Inc.*,
    138 F.3d 996 (5th Cir. 1998) ............................................................................40

*Conway v. State Farm Fire & Cas. Co.*,
    No. Civ. A. 98–0832, 1998 WL 961365 (E.D. Pa. Dec.11, 1998)....................20

*Depomed, Inc. v. Purdue Pharma L.P.*,
    No. 13-571 (MLC), 2017 WL 2804953 (D.N.J. June 28, 2017)................*passim*

*Dippolito v. United States*,
    CIV. No. 13-175 (RBK/JS), 2015 WL 1104813 (D.N.J. Mar. 11,
    2015) ..................................................................................................................29

*Environ Prod., Inc. v. Total Containment, Inc.*,
    C.A. No. 94-7118, 1996 WL 184468 (E.D. Pa. Apr. 11, 1996)........................28

*Fidelity Mgmt. & Research Co. v. Actuate Corp.*,
    275 F.R.D. 63 (D. Mass. 2011)....................................................................30, 33

*In re Gabapentin Pat. Litig.*,
    No. CA 00-CV-2931 FSH, 2011 WL 1807448 (D.N.J. May 12,
    2011) ..................................................................................................................40

*Gerald Chamles Corp. v. Oki Data Americas, Inc.*,
    Civ. No. 07-1947 (JEI), 2007 WL 4789040 (D.N.J. Dec. 11, 2007) .....18, 19, 20

*Halsey v. Pfeiffer*,
    No. CIV. A. 09-1138, 2010 WL 3735702 (D.N.J. Sept. 17, 2010)....................20

i

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) ..........................................................25

*McKeithan v. Jones*,
   212 F. App'x 129 (3d Cir. 2007) .................................................21, 29

*Minter v. Wells Fargo Bank N.A.*,
   258 F.R.D. 118 (D. Md. 2009) ..........................................................30

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
   15-cv-4431 SRC, 2017 WL 4155121 (D.N.J. Sept. 19, 2017)....................27, 32

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
   No. 15-4431 (SRC), 2017 WL 5495523 (D.N.J. Nov. 15, 2017)................28, 29

*N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*,
   117 F.R.D. 83 (M.D.N.C.1987) ..........................................................28

*Pamida, Inc. v. E.S. Originals, Inc.*,
   281 F.3d 726 (8th Cir. 2002) ..............................................................29

*Shelton v. American Motors*,
   805 F.2d 1323 (8th Cir. 1986) .............................................19, 27, 34

*Stepanski v. Sun Microsystems, Inc.*,
   No. 10-2700-PGS, 2011 WL 8990579 (D.N.J. Dec. 9, 2011)....................27, 32

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
   276 F.R.D. 376 (D.D.C. 2011) ..........................................................33

*V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*,
   C.A. No. 06-2304-FLW, 2008 WL 3887621 (D.N.J. Aug. 20,
   2008) ..........................................................................27, 28

**Statutes**

35 U.S.C. § 315(e)(2)................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b)(2) (C) .............................................21, 25, 26

Fed. R. Civ. P. 72................................................................18

## I.        INTRODUCTION

This Court should deny Purdue's appeal of Magistrate Judge Bongiovanni's December 22, 2017 Decision ("Magistrate's Order") because there has been no error of law and the Magistrate's Order was not "clearly erroneous."  Dkt. No. 351. Magistrate Judge Bongiovanni found that Purdue exercised its fair opportunity to take discovery of Depomed's trial counsel.  *Id.*  Purdue devotes its Appeal to arguing its assertions that it believes support its trumped up inequitable conduct claim, rather than addressing its burden to show how Magistrate Judge Bongiovanni did not act within her considerable discretion after thorough review of the record regarding this issue.  Purdue's repeated requests for an order requiring the live depositions of Depomed's trial counsel has turned this issue into a side show, and an improper use of the Court's precious judicial resources. Affirmance of the Magistrate's Order will end Purdue's attempts for unjustified and unnecessary depositions of Depomed's trial counsel.

## II.       SUMMARY OF FACTS

On January 29, 2013, Depomed filed a Complaint asserting that Purdue infringed U.S. Patent No. 6,340,475 and U.S. Patent No. 6,635,280 (collectively, the "Patents-in-Suit").  Dkt. No. 1.  Just before the statutory deadline, on January 24, 2014, Purdue filed three petitions for Inter Partes Review ("IPR") of the Patents-In-Suit before the Patent Trial and Appeal Board ("PTAB").  Purdue's

serial motions to stay the litigation pending the outcome of the IPR proceedings and Purdue's appeal to the Federal Circuit were granted, and this case was stayed for over two years.  Dkt. No. 90.  The stay was lifted on March 31, 2016, some three years after Depomed filed its Complaint.  Dkt. No. 117.

## A.   The Inventors Suit Spent Years of Research to Conceive of the Invention

In the pharmaceutical field, the development of a successful drug formulation is based on extensive research and development that often takes years of research and experimentation, followed by years of clinical trials that are submitted to the FDA for approval before a drug is made available for sale.  The work of combining complex chemical ingredients to achieve a viable formulation with reasonable expectation of success is no simple task.  The patented oral dosage form disclosed in Depomed's Patents-in-Suit is one example of an accomplishment that, in hindsight, appears easy to accomplish, but took years of trial and error.

One of the elements in the claimed invention of the Patents-in-Suit at issue here is a particular range of weight ratios of drug and polymer.  Claim 1 in both Patents-in-Suit requires that the weight ratio of drug to polymer range from "about 15:85 to about 80:20."  *See, e.g.,* Dkt. No. 5, Ex. 1 ('475 Patent, Claim 1).  The inventors spent years of testing and research to achieve this range of ratios in combination with the many other complex variables that needed to be considered in formulating the oral dosage form that included the other elements of the patent

2

claims, such as particular swellable polymers, solubility of drug, and dissolution profiles.

Depomed's laboratory notebooks and inventor testimony explain that while certain drug to polymer ratios were tested in 1993, it was not until April 1996 when the upper end of the claimed drug to polymer range (*i.e.*, "80:20") was achieved.  Declaration of Hannah Lee ("Lee Decl.") filed herewith, Ex. 1 (Louie-Helm *Ivax* Tr. at 183:3-6).  Ms. Louie-Helm, an inventor of the Patents-In-Suit, testified in the *Depomed, Inc. v. Ivax* litigation ("*Ivax* case") eleven years ago that while some initial studies were done on Captopril formulations in 1993, those studies ***did not cover*** the ranges of polymers contemplated by the invention of the Patents-in-Suit.  *See id.* (Louie-Helm *Ivax* Tr. at 182:15-183:6; 183:12-184:4; 184:15-19).  She testified that the "more accurate" date of conception was "April 12, 1996."  *Id.* (Louie-Helm Ivax Tr. at 183:3-6).

## B.  Depomed Has Consistently Identified 1996 As the Date of Conception

Since the first litigation involving the Patents-in-Suit filed some 12 years ago, which was the *Ivax* case, Depomed has consistently identified 1996 as the conception date of the invention of the Patents-in-Suit.  *See* Lee Decl., Ex. 1 (Louis-Helm *Ivax* Tr. at 183:3-6); *see also id.*, Ex. 2 at 7 (Depomed's 8/16/13 discovery responses in *Depomed, Inc. v. Actavis et al.*); *id.*, Ex. 3 at 12-13 (Depomed's 6/3010 discovery responses in *Depomed, Inc. v. Lupin*); *id.*, Ex. 4 at

15 (Depomed's 12/30/11 discovery responses in *Depomed, Inc. v. Lupin*); *id*., Ex.

5 at 11 (Depomed's 3/31.14 discovery responses in *Depomed, Inc. v. Endo*

*Pharmaceuticals Inc.*); Ex. 6 (Depomed's 12/9/13 discovery responses in this

litigation); Ex. 7 (Depomed's 9/28/16 discovery responses in this litigation).

The timeline below identifies examples of relevant factual information that

supports the 1996 conception date and how Depomed has consistently represented

that date over the last ten years in different litigations:

- June 2-3, 1993 – Depomed polymer swelling studies.  *See* Lee Decl., Ex. 8 (DEPO-PURDUE 018265-80).

- June 16, 1993 – June 17, 1993 – Depomed lab notebook pages showing experiments on Captopril formulations containing 40% Captopril / 60% HEC (polymer).  *See id.* (DEPO-PURDUE 018286-88).

- June 29, 1993 – Depomed lab notebook pages showing polymer screening swelling study.  *See id.* (DEPO-PURDUE 018289).

- August 21-24, 1993 – Depomed lab notebook pages showing experiments on Captopril formulations containing 19% Captopril and 20% Captopril to HEC (polymer).  *See id.* (DEPO-PURDUE 018317).

- January 29-February 1, February 12-13, February 23, February 26, 1996 – Depomed lab notebook pages showing experiments on Captopril formulations containing 5.6% Captopril/94.4% polymer and 18.5% Captopril/81.5% polymer.  *See id.*, Ex. 9 (DEPO-PURDUE 018553-62; DEPO-PURDUE 018570-82).

- April 12, 1996 – Depomed lab notebook pages showing experiments on Captopril formulation containing  80% Captopril / 20% PolyOx (the upper end of the claimed drug-to-polymer range) and 18.5% Captopril / 81.5% PolyOx.  *See id.*, Ex. 10 (DEPO-PURDUE 018625).

- July 2, 2006 – Depomed served initial responses to IVAX's interrogatories stating erroneously a conception date of June 16, 1993. *See id.*, Ex. 11 at 4 (Depomed's Initial *Ivax* Interrogatory Response).

- January 25, 2007 – Depomed served amended IVAX interrogatory responses, correctly earlier responses to identify a conception date of ***April 12, 1996***. *See id.*, Ex. 12 at 5-6 (Depomed's Amended Ivax Response).

- February 27, 2007 - Ms. Louie-Helm's deposition testimony in the *Ivax* case that the ***April 12, 1996*** date was the correct date for conception (see above). *See id.*, Ex 1 at 183:3-6 (Louis-Helm *Ivax* Tr.).

- June 30, 2010 - Discovery responses served in *Depomed, Inc. v. Lupin* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 3 at 12-13 (Depomed's 6/30/10 discovery responses in *Depomed v. Lupin*).

- December 30, 2011 - Discovery responses served in *Depomed, Inc. v. Lupin* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 4 at 15 (Depomed's 12/30/11 discovery responses in *Depomed v. Lupin*).

- August 16, 2013 – Discovery responses served in *Depomed, Inc. v. Actavis* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 2 at 7 (Depomed's 8/16/13 discovery responses in *Depomed v. Actavis*)

- December 9, 2013 – Discovery responses served in this case (*Depomed v. Purdue*) supporting ***April 12, 1996*** as the conception date. *See id.*, Ex. 6 at 2-3 (Depomed 12/9/13 response to Interrogatory No. 12) (identifying lab notebooks and data supporting conception date).

- March 31, 2014 – Discovery responses served in *Depomed, Inc. v. Endo Pharmaceuticals Inc.* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 5 at 11 (Depomed's 3/31/14 discovery responses in *Depomed v. Endo Pharmaceuticals*).

- October 14, 2014 – Patent Owner Response filed; Ms. Louie-Helm IPR Declaration is signed identifying ***April 1996*** as conception date. *See* Dkt. No. 354-2, Declaration of Liza M. Walsh ("Walsh Decl."), Ex. F (Louie-Helm 10/14/14 Declaration).

5

- December 14, 2014 – Purdue takes Ms. Louie-Helm's deposition concerning her IPR Declaration.  Questions during the deposition confirmed there was research and development leading up to the ***April 12, 1996*** conception date.  *See* Lee Decl., Ex. 13 at 31:25-32:15 (Louie-Helm 12/14/2014 IPR Tr.).

- March 19, 2015 – IPR Oral Hearing.  *See* Walsh Decl., Ex. J (3/19/15 Oral Hearing Tr.).

- July 8, 2015 – PTAB confirms validity of all asserted claims.  *See id.*, Ex. C (Final Decision in IPR2014-00379); *id.*, Ex. B (Final Decision in IPR2014-00378); *id.*, Ex. A (Final Decision in the IPR2014-00377).

- March 24, 2016 – Federal Circuit confirms validity of all asserted claims.  *See* Lee Decl., Ex. 14 (Federal Circuit Decision).

- September 27, 2016 – Purdue takes Ms. Louie-Helm's deposition again and ask her questions on the uncorrected July 2, 2006 interrogatory responses from the *Ivax* case regarding the incorrect conception date.  Purdue's attorney does not show her the amended and corrected interrogatory responses dated January 25, 2007.  *See* Walsh Decl., Ex. K (Louie-Helm 9/27/16 Tr. at 211-214 (questioning Ms. Louie-Helm on the inoperative response).

- September 28, 2016 – Supplemental discovery responses served in this case (*Depomed v. Purdue)* supporting ***April 12, 1996*** as the conception date.  *See* Lee Decl., Ex. 7 at 6-8 (Depomed's 9/28/16 Supplementary Response to Interrogatory No. 12).

## C.  Purdue's IPRs Were Unsuccessful

In support of Depomed's Responses to Purdue's three IPR Petitions,

Depomed submitted the declaration of Ms. Louie-Helm, and Dr. Hal Hopfenberg,

Depomed's technical expert.  Consistent with her testimony in the *Ivax* case, Ms.

Louie-Helm's declaration described how it took years of testing to come up with

the claimed invention[1].  Her declaration stated: "[b]etween 1993 and 1996, Dr.

Shell [a co-inventor] and I also worked on development of gastric retentive

formulations for Captopril" and "[i]t took me three years testing various polymers

with guidance of Dr. Shell to achieve the Captopril formulation that contained

aspects of the claims of the '475 and '280 Patents."  Walsh Decl., Ex. F (Louie-

Helm IPR Decl., ¶¶13, 21).  And, "[i]n April 1996, we completed a study of a

Captopril formulation that contained the aspects of the claims of the '475 and '280

Patents." *Id.*, ¶14.  In connection with the IPR proceedings, Purdue's counsel

deposed Ms. Louie-Helm on December 14, 2014 regarding her declaration, and she

confirmed during deposition that she conducted research and development leading

up to the April 1996 conception date.  *See* Lee Decl., Ex. 13 at 31:25-32:15 (Louie-

Helm 12/14/2014 IPR Tr.).

Dr. Hopfenberg, who has 34 years of experience consulting with Alza

Corporation, a pharmaceutical and medical systems company, on research and

development of pharmaceutical formulations and controlled drug delivery,

submitted an expert declaration regarding why the Patents-in-Suit were valid over

the asserted prior art.  His declaration included the opinion that it "would require

---

[1] Purdue notes that Depomed's attorneys were involved in drafting Ms. Louie-
Helm's declaration to submit to the PTAB.  The fact that attorneys are involved in
drafting a declaration does not translate into an appropriate conclusion that false
statements were made.  Purdue's attorneys have also been involved in drafting
declarations of third parties that were submitted to the PTAB in the IPRs as well as
this litigation.

more than routine experimentation to arrive at the dosage forms and method of administration" claimed in the Patents-in-Suit at the time of the invention.  *See* Lee Decl., Ex. 15 at ¶83 (Hopfenberg Decl.).  He opined that "[o]ne of skill in the art would have found it uniquely challenging at the time of the invention to arrive at the claimed invention of the [Patents-in-Suit] due to the plethora of structural complexities controlling polymer properties" and there was a "vast array of structural considerations affecting polymer and matrix properties as understood by the person of ordinary skill in the art."  *Id*., ¶65.  For his opinions, he relied upon his 34 years of knowledge and experience in formulating dosage forms, the testimony of Purdue's expert that "[t]heoretically you can make millions of formulations" based on multiple variables, and Ms. Louie-Helm's declaration.  *Id.*, Ex. 16 at 70:11-12 (IPR Ex. 2018).

At the IPR hearing before the PTAB, Depomed's counsel stated, consistent with Ms. Louie-Helm's declaration and testimony, that it took years to come up with the invention.  Specifically, he pointed to Ms. Louie-Helm's sworn testimony regarding her years of work "to get this formulation down to where it needed to be for a patented invention" by testing different swellable polymers during that time frame to achieve the patented invention.  *See* Walsh Decl., Ex. J (IPR Hearing Tr. at 48:19-21; 49:7-10, 49:15-21).  These arguments echoed Ms. Louie-Helm's declaration and testimony in multiple depositions that she worked on manipulating

various variables to come up with the claimed inventions in the years leading up to April 1996. *Id.*, Ex. F, ¶¶13, 21 (Louie-Helm IPR Decl.); *id.*, Ex. K (Louie-Helm 9/27/16 Tr. at 230:7-18); Lee Decl., Ex. 13 ((Louie-Helm 12/14/2014 IPR Tr. at 31:4-11; 58:11-24; 59:6-25).

On July 8, 2015, the PTAB issued Final Written Decisions in all three IPR proceedings and found that the challenged patent claims were valid over the prior art. The PTAB stated that it was "not persuaded that Petitioner has shown by a preponderance of the evidence that a person of ordinary skill in the art would have had a reason to combine the references with a reasonable expectation of success." *See* Walsh Decl., Ex. C at 26-27 (IPR2014-00379 Final Decision); *see also id.*, Ex. B at 25 (IPR2014-00378 Final Decision); *id.*, Ex. A at 26 (IPR2014-00377 Final Decision). The PTAB found Purdue failed to "explain persuasively *why* a person of ordinary skill in the art" would have reason to combine elements to come up with the claimed invention, or that, even if there was a reason to combine, a "person of ordinary skill in the art would have had a reasonable expectation of success in doing so." *Id.*, Ex. C at 28-29; *id.*, Ex. B at 27; *id.*, Ex. A at 28. The PTAB cited to numerous pieces of evidence to support its decision, including (i) the sworn testimony of Purdue's expert confirming that there were multiple formulation considerations to be considered, (ii) the sworn testimony of Dr. Hopfenberg that a "vast array of structural considerations affect polymer and

matrix properties," and Ms. Louie-Helm's declaration.  *Id.*, Ex. C at 26-29; *id.*, Ex.

B at 24-28.

On March 24, 2016, the Federal Circuit affirmed the PTAB's findings of

validity.  Under 35 U.S.C. § 315(e)(2), Purdue is estopped from asserting its

unsuccessful IPR challenges in this litigation, and the Federal Circuit's decision

has left Purdue with no reasonable invalidity challenge to Depomed's patents

between the estoppel applied and the PTAB's findings that Purdue's asserted prior

art did not rise to the level of a invalidity challenge under the PTAB's lower

burden of proof of a preponderance of evidence.

## D.   Purdue Manufactures An Inequitable Conduct Counterclaim

Having lost the majority of its validity challenges in March 2016, Purdue

turned to chicanery during Ms. Louie-Helm's deposition taken several months later

to concoct allegations that are the basis for its inequitable conduct theory.  In

September 2016, Purdue deposed Ms. Louie Helm as a fact witness about the facts

surrounding events that occurred some 20 years earlier regarding conception,

Purdue misleadingly presented her with inoperative discovery responses dated July

20, 2006 ("Initial Response") from the prior *Ivax* case that was subsequently

corrected in the same litigation a number of months later.  This Initial Response,

which was served over 10 years before this 2016 deposition, identified June 16,

1993 as the conception date for the asserted claims of the Patents-in-Suit.

As noted in the timeline above, Depomed subsequently corrected this Initial Response during the *Ivax* case and served amended responses in January 2007 ("Interrogatory Response"), identifying April 12, 1996 as the conception date for the invention of the Patents-in-Suit. Purdue, despite having copies of the Initial Response and the Interrogatory Response as Depomed had produced them to Purdue some three years earlier in this litigation, nonetheless intentionally attempted to mislead Ms. Louie-Helm during deposition with the Initial Response. *See* Lee Decl., ¶14 (produced responses three years earlier). Purdue never identified nor presented her with the corrected Interrogatory Response during her deposition. Rather, Purdue only pursued a line of questions about the events that had occurred some 20 years before Ms. Louie-Helm's 2016 deposition using the outdated Initial Response that it knew contained incorrect information.

Despite Purdue's attempt to mislead Ms. Louie-Helm about events that happened some 20 years earlier, she was able to confirm during her 2016 deposition that 1996 was the correct conception date, consistent with her prior testimony from the *Ivax* case as well as Depomed's discovery responses served in other prior litigations. For example, when Purdue's counsel asked a series of misleading questions to Ms. Louie-Helm with the inoperative Initial Response, she testified that she "would need to confirm" to determine the correct facts. Walsh Decl., Ex. K (Louie-Helm 9/27/16 Tr. at 223:22-225:8). Finally, when she was

11

actually shown the operative Interrogatory Response, she testified that she had come up with an example of an embodiment within the range of claimed drug-to-polymer ratios in 1993 but "hadn't thought about" the full scope of the claimed range of drug to polymer ratios but did further research and development by testing different drug loadings at the ends of the drug-to-polymer range of ratios up until April 1996. *See id.* (Louie-Helm 9/27/16 Tr. at 227:2-11; 229:8-25; 239:9-241:18). She also confirmed that, as she had testified in the *Ivax* case, the "more accurate date [of the invention] would be April 12, 1996" because "[b]y April 12, 1996, we had tested the upper range of 80 percent drug to 20 percent polymer." *Id.* (Louie-Helm 9/27/16 Tr. at 235:14-238:21).

On June 28, 2017, Judge Cooper allowed Purdue to plead inequitable conduct counterclaim and defense in response to Depomed's amended Complaint alleging a claim of willful infringement. Dkt. No. 303. Judge Cooper held that "[t]he standards for pleading a claim of inequitable conduct are more lenient than the standards for obtaining relief," and, ultimately, to prevail, Purdue would need to show that deceptive intent was the "single most reasonable inference." *Id.* at 8.

### E.    Purdue Abused The Discovery It Was Permitted To Serve

On April 25, 2017, Magistrate Judge Bongiovanni granted Purdue's request that Depomed respond to written discovery requests regarding its inequitable conduct allegations in the event the Court denied Depomed's motion to dismiss

Purdue's inequitable conduct counterclaim.  Dkt. No. 285; Lee Decl., Ex. 17

(6/29/17 e-mail from Bongiovanni).  Purdue abused the Court's leave to take

discovery on many fronts.  Not only did Purdue propound an unreasonable number

of discovery requests on Depomed, it also sought attorney-client privileged and

work product information from Depomed's trial counsel and in-house counsel, and

information that Purdue had already obtained during fact discovery in this case

some three years earlier.  Many of the 291 Requests for Admission, 18 Requests

for Production, and 32 interrogatories were fraught with legal conclusions and

wrong statements regarding the conception date that Purdue knew could not be

answered as asked or was duplicative of what had previously been produced to

Purdue years ago in the litigation.  Despite Purdue's unreasonable number of

requests, Depomed provided responses in good faith, pointing to the numerous

documents and evidence that Purdue had in its possession since the beginning of

the litigation.  *See* Lee Decl., Ex. 18 (Depomed Response to Purdue Request for

Production No. 149 ("[R]esponsive, non-privileged documents have been produced

to the extent they exist regarding communications between Ms. Louie-Helm and

Depomed regarding relevant work on Captopril between 1993 and 1996.")).

## F.   Purdue Violated the Court's Directive to Serve Narrowly Tailored Written Deposition Questions on Depomed's Trial Counsel

On July 7, 2017, Purdue served five notices of deposition on Depomed, its

in-house attorneys, and its trial counsel, and separately issued four subpoenas on

Depomed's trial counsel as individuals and on Depomed's law firm.  Dkt. No. 316 at 1-2.  Depomed moved for a protective order and to quash the subpoenas on the basis that Purdue's requests were overbroad, improperly sought privileged and work product information and were duplicative of previously served discovery. Dkt. No. 316.  On September 19, 2017, Magistrate Judge Bongiovanni determined that written deposition questions would ensure Purdue would not unfairly use a deposition as an opportunity to ask questions of its opposing trial counsel in an attempt to waive attorney-client privileged or work product information.  *See* Walsh Decl., Ex. M (9/19/17 Hearing Tr. at 24:14-23).

Specifically, Magistrate Judge Bongiovanni ordered Purdue to serve written depositions on Depomed's attorneys that were (1) factual in nature, (2) focused on Paragraph 21 of Ms. Louie-Helm's IPR Declaration, and (3) served on, at most, the three attorneys involved in the drafting of the Helm Declaration.  *See id.* (9/19/17 Hearing Tr. at 20:9-21:15; 23:1-24:23; 29:11-30:9, 10:3-15; 12:4; 19:20; 20:9-11; 23:6-24:23; 26:17-27:3).  Purdue ignored these limitations and instead served 106 objectionable questions on four different attorneys representing Depomed, collectively over 400 deposition questions to Depomed's attorneys.  Lee Decl., Ex. 19 (9/29/17 Defendant's Rule 31 Deposition Questions to P. Andre, G. Hu, H. Lee, P. Simboli).  Purdue served these requests on Depomed's in-house counsel, Mr. Simboli, and three outside trial counsel for Depomed who represented Depomed in

14

this litigation and the IPR proceedings: Mr. Andre, Ms. Lee, and Dr. Hu[2].  *Id.*

The vast majority of Purdue's deposition questions were either repetitive or objectionable on their face because, for example, they assumed facts and legal conclusions that made a fair response not possible.  For instance, Purdue posed the following questions that improperly assumed the invention was conceived of in less than 10 days in 1993:

> Q28: "As of October 14, 2014, were you aware that Ms. Helm made an embodiment of the invention of at least one of the claims of the '475 and '280 patents in 1993?" (*See, e.g.*, Dkt. No. 261 ¶¶ 31, 37, 46-47, 54, 67-71).
> Q30: "As of October14, 2014, were you aware that Ms. Helm made an embodiment of the invention of at least one of the claims of the '475 and '280 patents in less than 10 days of experimentation?"

Lee Decl., Ex. 19 (Purdue's Written Deposition Questions at 4).  Magistrate Judge Bongiovanni recognized that many of Purdue's questions assumed facts and made legal conclusions in dispute.  *See* Dkt. No. 347 n.4 ("The Court appreciates that the questions themselves may be in some way unfair, e.g., "did you ever stop beating your wife?").  Depomed also informed Magistrate Judge Bongiovanni that many of Purdue's written questions improperly sought responses that would waive attorney client and work product privilege.

---

[2] Dr. Hu was previously trial counsel for Depomed at Kramer Levin, but is now employed at Cravath.  Purdue informed the Court that it did not seek to depose Dr. Hu upon receipt of his answers to written deposition questions.  Lee Decl., Ex. 20 (Purdue's 10/12/17 Letter at n.1).

A number of Purdue's questions also improperly sought information based on a theory of inequitable conduct that the Court already struck regarding Depomed's responses to interrogatories. *See* Dkt. No. 303 at 16-18; *see also* Lee Decl., Ex. 19, Question Nos. 117-19 (questions concerning interrogatory responses). Finally, Purdue also improperly served questions on Mr. Simboli, who Purdue had agreed not to depose during the hearing with the Court. Walsh Decl, Ex. M (9/19/17 Hearing Tr. at 23:15-19).

Despite Purdue's willful disregard of the Court's discovery limitations and its own representations to the Court regarding the discovery it would serve, Depomed made its best efforts to respond to Purdue's requests, providing responses to Purdue's over 100 written deposition questions in an attempt to finally resolve this manufactured dispute and move on to litigating the merits of this patent infringement case. Depomed's attorneys answered numerous questions regarding information they were aware of at the time of the IPR proceedings. *See, e.g.*, Walsh Decl., Exs. N-O (Andre and Lee Answers to Questions 53, 98 (served on October 6, 2017)).

Purdue claimed that the answers to written deposition questions were inadequate and requested that the Court grant live, in-person depositions. Lee Decl., Exs. 20-21 (Purdue's 10/12/17 and 10/19/17 letters); Dkt. No. 344 (Purdue's 11/17/17 letter). Depomed responded identifying how Depomed's attorneys had

16

provided fair and reasonable responses to Purdue's written questions. *Id.*, Ex. 22 (Depomed's 10/17/17 letter). Magistrate Judge Bongiovanni carefully reviewed the parties' correspondence and Depomed's attorneys' answers to the written deposition questions. Dkt. No. 347. She again found that in-person depositions were not warranted, including any continued deposition of Depomed's in-house counsel who had no involvement with the drafting of the Helm Declaration or the Patent Owner Response. *Id.* To address Purdue's concerns, she ordered that Depomed's trial counsel supplement its answers to certain questions (10 questions directed to Ms. Lee, and 11 questions directed to Mr. Andre). *Id.* Magistrate Judge Bongiovanni also ordered that Depomed's attorneys supplement their responses these questions with a "yes," "no," or "I can't answer the question" and an explanation. *Id.* at 3.

Depomed's trial counsel fully complied with the Magistrate's Order and provided supplemental responses regarding what they intended and the information they were aware of at the time of the IPR proceedings. *See* Dkt. No. 351 at 4; *see also, e.g.*, Walsh Decl., Exs. P-Q (Supp. Responses to Rule 31 Deposition Questions). Purdue, nonetheless, again insisted on live testimony on the grounds that these responses were "evasive." *See* Walsh Decl., Exs. P-Q (Andre and Lee Supp. Responses to Questions 28-29). Depomed opposed Purdue's request as overreaching and outside the bounds of reasonable discovery and because Purdue

had no compelling need to conduct additional oral depositions to discover anything

further beyond what Depomed already produced years ago to Purdue in the way of

numerous laboratory notebooks, development documents, deposition testimony,

and discovery responses in this litigation and multiple prior litigations.  Dkt. No.

349 (Depomed's 12/14/17 letter).  Upon thorough review of the record and

Depomed's supplemental responses to Purdue's written deposition questions,

Magistrate Judge Bongiovanni denied Purdue's request.  Dkt. No. 351.

## III. THE MAGISTRATE'S ORDER WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW

Purdue spends the majority of its appeal brief restating the facts that it

contends support its inequitable conduct theory, which are not grounds to support a

claim that Magistrate Judge Bongiovanni's Decision was clearly erroneous or is

contrary to law.  Fed. R. Civ. P. 72.  Purdue cannot demonstrate that Magistrate

Judge Bongiovanni abused the broad discretion entrusted to her in determining

discovery issues as the one that Purdue raised.  *Gerald Chamles Corp. v. Oki Data*

*Americas, Inc.*, Civ. No. 07-1947 (JEI), 2007 WL 4789040, at *1 (D.N.J. Dec. 11,

2007) (Magistrate Judges have broad discretion to decide discovery issues).

### A. Magistrate Judge Bongiovanni Did Not Abuse Her Discretion

#### 1. The Magistrate's Order Described Her Analysis

Magistrate Judge Bongiovanni did a thorough analysis of the

appropriateness of Purdue's request for live depositions of Depomed's trial

counsel, including conducting a hearing with the parties, accepting multiple briefs on the issue, and producing two orders, one on November 29, 2017 (ordering Depomed's trial counsel to provide supplemental responses to written deposition questions) and the December 22, 2017 Order at issue here. *See* Dkt. Nos. 347, 351 (discussing the history of the dispute and information considered). In determining that "no additional discovery from the Kramer Levin attorneys [who are Depomed's trial counsel] is warranted," she considered and analyzed a wide range of factors. First, Judge Bongiovanni "allowed Purdue to depose" Depomed's trial counsel and required them to supplement their responses. Dkt. No. 351 at 4. Thereafter, she reviewed all of these deposition responses, including the supplemental responses, which she found were "acceptable" and "meaningfully and fairly answer[ed] the questions posed by Purdue," such that "the information provided [was] adequately responsive." *Id.*; *see also id.* at 5 ("the Court finds the supplemental response to be meaningful. They fairly respond to the questions posed."). These findings were reached after Magistrate Judge Bongiovanni assessed the relevant law, including the *Shelton* factors and identified the specific circumstances of this case, namely that the IPR proceedings were at issue, as opposed to initial prosecution of a patent or reexamination proceedings. *Id*. at 2-4.

Based on the discovery taken to date, the fact that Purdue "has had the opportunity to depose Ms. Helm at length," she held that "given the specific

responses provided, the Court finds live testimony is not warranted" after stating

that "[t]he Court is hard pressed to find that said responses would materially

change if live testimony was compelled." *Id.* at 4-5. Magistrate Judge

Bongiovanni's conclusion after her thorough analysis of the law and facts that live

depositions of trial counsel is not warranted or would yield further information was

appropriate and entirely within the Court's discretion.

### 2. Limiting the Scope of Discovery Is Within the Court's Discretion

For discretionary matters, such as the scope of discovery, courts in this

Circuit have determined "the clearly erroneous standard implicitly becomes an

abuse of discretion standard." *Halsey v. Pfeiffer*, No. CIV. A. 09-1138, 2010 WL

3735702, at *1 (D.N.J. Sept. 17, 2010); *see also Conway v. State Farm Fire &*

*Cas. Co.*, No. Civ. A. 98–0832, 1998 WL 961365, *1 (E.D. Pa. Dec.11, 1998)

(applying a standard of abuse of discretion to a magistrate judge's discovery order

in an insurance bad faith claim). Here, there has been no abuse of the discretion in

limiting Purdue's deposition questioning of Depomed's trial counsel to written

questions. After ordering the written deposition questions and the supplementation

thereof, Magistrate Judge Bongiovanni determined that deposition responses

provided Purdue the responsive information that it needed, and nothing futher

could be gained from further deposition. Thus, contrary to Purdue's claims, oral

depositions of Depomed's trial counsel is not presumptively entitled to discovery

under Rule 26.  Appeal at 22.

Indeed, Rule 26 vests the district court with the authority to limit a party's pursuit of otherwise discoverable information when it is unreasonably cumulative or duplicative, or can be otherwise obtained by less burdensome means, the party has already had ample opportunity to take discovery, or it exceeds the scope of what is permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2) (C); *Anderson v. Corr. Med. Servs., Inc.,* No. 04-3410 (GEB), 2006 WL 1644709, at *3 (D.N.J. June 6, 2006) (denying request to depose a witness where defendants had "ample opportunity . . . to obtain the information sought prior to filing the application").  A discovery request is properly denied, as it was here, where Magistrate Judge Bongiovanni found that nothing more would be gained with live testimony, that the unique circumstances of this case was unlike other cases that Purdue cited did not require live testimony, and where permitting depositions through written questions "struck the appropriate balance" for the need of discovery and the issues surrounding deposing trial counsel.  Dkt. No. 351 at 4-5; *see also McKeithan v. Jones,* 212 F. App'x 129, 131 (3d Cir. 2007) (upholding district court's determination that written depositions were sufficient).

Moreover, Purdue has failed to point to valid reasons why the extensive written responses Depomed provided are inadequate.  Purdue complains that the attorney responses are "evasive" and "inconsistent," while many of the responses

Purdue appears to believe are "evasive" were attempts to directly answer questions that improperly assumed facts or made legal conclusions.

For example, many of the questions of Depomed's trial counsel sought answers about what they knew as of October 2014, over three years ago. *See, e.g.*, Walsh Decl., Ex. N (Lee Answer to Question 3, 6-20, 37-40, 47-48, 82). Depomed's attorneys attempted to provide fulsome and direct responses to Purdue's questions, but it is reasonable that they would not be able to recall extremely specific details from over three years ago regarding such things like: the specific time, date, and length of drafts of documents. *See, e.g.*, Lee Decl., Ex. 19 (Purdue's Written Deposition Questions 3, 6-20, 37-40, 47-48, 82). Depomed's attorneys, however, provided relevant and responsive details in response to questions regarding their "awareness" and intent such that Purdue's request for additional live depositions is unwarranted. Below are examples of Depomed's trial counsel's fulsome responses:

**Q28: As of October 14, 2014, were you aware that Ms. Helm made an embodiment of the invention of at least one of the claims of the '475 and '280 patents in 1993? (See, e.g., Dkt. No. 261 ¶¶ 31, 37, 46-47, 54, 67-71).**

> Ms. Lee: *No. I understand the invention to have been conceived of no earlier than April 1996 based on Ms. Louie-Helm's deposition testimony in the Ivax case and interrogatory responses from prior litigations.*
>
> Mr. Andre: *No.*

**Q53: What is the factual basis for the statement in paragraph 21 of the Helm Declaration that it took "three years testing various polymers with guidance**

**of Dr. Shell to achieve the Captopril formulation that contained the aspects of the claims of the '475 and '280 Patents"?**

> Ms. Lee: *The factual basis is the relevant laboratory notebooks, Ms. Helm's deposition testimony in prior litigations, the deposition testimony of other employees/former employees of Depomed regarding conception and reduction to practice of the Patents-in-Suit, interrogatory responses from prior litigations, the evidence cited therein, and information from Ms. Helm*

> Mr. Andre: *The information relied upon for the Helm Declaration included at least the following:*

> - *Information provided by Ms. Helm*
> - *Depomed laboratory notebooks*
> - *Interrogatory responses in Depomed v. IVAX*
> - *Interrogatory responses in Depomed v. Sun*
> - *Interrogatory responses in Depomed v. Actavis*
> - *Interrogatory responses in Depomed v. Lupin*
> - *Interrogatory responses in Depomed v.Endo Pharmaceuticals*
> - *Interrogatory responses in Depomed v.Purdue*
> - *Deposition testimony of Ms. Helm on February 27, 2007*

> *Based on this evidence, it was determined that Ms. Helm and her co-inventors had the formation in their minds, of a definite and permanent idea of the complete and operative invention as of April 1996*

**Q66: Is it your understanding that Ms. Helm in her Declaration conveyed to the PTAB that she had achieved an embodiment of the invention on June 17,1993?  (Dkt. No. 261 ¶ 46).**

> Ms. Lee: *The Helm Declaration shows Ms. Helm was working on achieving the full scope of the claimed invention between 1993 and 1996.*

> Mr. Andre: *Based on the evidence, it was determined that Ms. Helm and her co-inventors had the formation in their minds, of a definite and permanent idea of the complete and operative invention as of April 1996.*

**Q105: As of October 14, 2014, did you know that the statement was incorrect and that, instead, Ms. Helm actually reduced to practice an embodiment of the claimed invention on her first attempt on June 16, 1993? (Dkt. No. 261 ¶ 39).**

Ms. Lee: *"On her first attempt" is misleading as it took years of research to conceive of the entire claimed invention.  All the evidence supports an April 1996 date of conception.  The Helm Declaration that was submitted to the PTAB contained information consistent with Depomed's interrogatory responses in Ivax and subsequent prior litigations, and Ms. Helm's deposition testimony in the Ivax case where she discusses the information she relies upon to conclude the conception date was in April 1996.*

Mr. Andre: *Based on the evidence, it was determined that Ms. Helm and her co-inventors had the formation in their minds, of a definite and permanent idea of the complete and operative invention as of April 1996.*

**Q116  (only asked to Mr. Andre): At the time you made each of these statements, did you believe that it took Ms. Helm three years testing various polymers with guidance of Dr. Shell to achieve the captopril formulation that contained the aspects of the claims of the '475 and '280 Patents?**

Mr. Andre: *Yes.*

Walsh Decl., Exs. N-O (Lee and Andre Answers to Written Deposition Questions at 53, 66, 105); *id.*, Exs. P-Q (Supplemental Answers to Questions 28-29, 116).  As shown by the exemplary responses above, Depomed's counsel provided information regarding their awareness, understanding, and beliefs at the time of the Patent Owner Responses.  Purdue is simply dissatisfied that it did not get the answers it hoped for.  That is not grounds for finding the Magistrate Judge's Order clearly erroneous.

Purdue claims that due to the written nature of the responses, it had "no opportunity to ask follow up questions."  However, Purdue tellingly does not specify how any follow-up questions would yield answers different from what Depomed and its attorneys have already produced to Purdue and resolve the issues.

24

Fed. R. Civ. P. 26.  Indeed, the great burden to Depomed and its trial counsel outweigh any speculative suggestion that further deposition would yield more information where Magistrate Judge Bongiovanni already found that no material changes to the responses would occur if live testimony was compelled.  Fed. R. Civ. P. 26(b)(1).

Depomed disputes Purdue's position that an "embodiment" of the invention can exist before the invention was conceived.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115-16 (Fed. Cir. 2004) (an invention is defined by all the elements of the claim, not a portion of the claim).  Coming up with an example within a claimed range does not constitute conception of the entire range of the claimed invention.  *Id.* at 1116; *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1301 (Fed. Cir. 2013) (examples do not limit the scope of the invention).  Indeed, the Patent Office could not issue a patent for a broad range based on description of support for only one example within that range.  Therefore, Purdue's citation to cases regarding proving an invention obvious with a single embodiment is not persuasive as those cases do not concern conception of an invention.  Appeal at 5 n.4.

Live depositions of Depomed's trial counsel with exhibits is not going to change their testimony.  For example, Purdue's counsel already represented the Court that one cannot necessarily tell from looking at the notebooks themselves

25

that there was any evidence of inequitable conduct, and using a live deposition to show such documents to Depomed's counsel will not result in different answers to deposition questions.  *See* Walsh Decl., Ex. M (9/19/17 Hearing Tr. at 16:10-14). As Magistrate Judge Bongiovanni noted, "[w]hile it is clear that Purdue does not like the answers provided, the Court finds the information provided is adequately responsive."  Dkt No. 351 at 4.

Furthermore, additional Rule 26 factors weigh against live depositions of Depomed's trial counsel.  Contrary to Purdue's claim, the parties do not both have "significant" resources for additional live depositions.  Appeal at 23.  Depomed has already expended significant time and expense in responding to Purdue's hundreds of discovery requests regarding its infirm inequitable conduct claim and addressing Purdue's repeated motion practice regarding live depositions.  If Purdue is permitted to take additional live depositions, this will cost the parties the significant time and expense of flying multiple attorneys across the country to take depositions (from New York to California on multiple occasions).

In addition, the fact that this is a case involving a large amount of monetary damages does not translate into granting Purdue free reign to take the deposition of opposing trial counsel given Purdue already has obtained meaningful and adequate responses to its questions.  Dkt. No. 351 at 4.  Accordingly, the Court should deny Purdue's appeal to take live depositions of Depomed's trial counsel.

26

**B.**   **The *Shelton* Factors Are Not Used To Compel Further Deposition**

**1.**   **The *Shelton* Factors Address Whether A Deposition Will Take Place**

As stated in the Magistrate's Order and Purdue's Appeal, the *Shelton* factors are considered when deciding "whether to allow opposing counsel to be deposed." Dkt. No. 351 at 3; Appeal at 20-21.  Here, after citing to the *Shelton* factors, the Magistrate's Order states that the focused written deposition questions of Depomed's trial attorneys were already compelled.  Dkt No. 351 at 4 (citing cases that cite *Shelton*[3]).  Thus, Magistrate Judge Bongiovanni had already determined that trial counsel could be deposed and compelled supplementation of some deposition questions, a fact that she addressed throughout her Order.  Dkt. No. 351 at 2, 4 and 5.  Contrary to Purdue's claims, there was no clear error with respect to the Magistrate's analysis of the *Shelton* factors, which simply addresses ***whether*** a deposition will take place, not whether it will take place by written deposition questions or live testimony.  Moreover, none of the cases cited in  Purdue's Appeal, including *Shelton*, require that any deposition of trial counsel ***must*** be an oral deposition, which Purdue attempts to suggest.  Appeal at 25.

Purdue cites to multiple cases for the proposition that courts recognize that the proper course is to allow oral depositions.  *V. Mane Fils, S.A. v. Int'l Flavors &*

---

[3] *Stepanski v. Sun Microsystems, Inc.*, No. 10-2700-PGS, 2011 WL 8990579, at *18 (D.N.J. Dec. 9, 2011) and *Mondis Tech. Ltd. v. LG Elecs., Inc.*, 15-cv-4431 SRC, 2017 WL 4155121, at *2 (D.N.J. Sept. 19, 2017).

*Fragrances Inc.*, C.A. No. 06-2304-FLW, 2008 WL 3887621 (D.N.J. Aug. 20, 2008); *Environ Prod., Inc. v. Total Containment, Inc.,* C.A. No. 94-7118, 1996 WL 184468 (E.D. Pa. Apr. 11, 1996); *Alcon Labs, Inc. v. Pharmacia Corp*, 225 F. Supp. 2d 340 (S.D.N.Y. 2002); *Mondis Tech. Ltd. v. LG Elecs., Inc.,* No. 15-4431 (SRC), 2017 WL 5495523, at *2 (D.N.J. Nov. 15, 2017)("*Mondis II*").  However, these citations are inappropriate because in *V. Mane Fils, Environ Prod., Inc., and Mondis II,* there was never a discussion of whether oral depositions should be compelled after written depositions had already been taken.  In those cases, the option of written depositions was not explored at all.  In *Alcon Labs*, the court allowed oral depositions of the prosecuting attorney in part ***because written discovery was not available***, as the prosecuting attorney was not a party to the case and therefore was not subject to interrogatories under the Federal Rules.  225 F. Supp. 2d at 343–44 ("[A]n attorney's deposition should be precluded when there are other persons available to testify as to the same information or if interrogatories are available"), citing *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc*., 117 F.R.D. 83, 86 (M.D.N.C.1987) ("If there are other persons available who have the information, they should be deposed first. Also other methods, such as written interrogatories which do not involve the same dangers as an oral deposition, should be employed.").  The court in *Alcon Labs* recognized that, while available as a last

resort, oral depositions of trial counsel are highly disfavored and other avenues for discovery, such as those Purdue has already been afforded here, are preferable. *Id.*

Moreover, when the Third Circuit has considered whether a district court's use of written depositions is appropriate, it has approved the district court's discretion to order the use of written deposition questions. *See McKeithan*, 212 F. App'x at 131 (upholding district court's determination that written depositions were sufficient). District courts also approve of written depositions, particularly where, as here, there is no showing that oral depositions are necessary. *See, e.g., Dippolito v. United States*, CIV. No. 13-175 (RBK/JS), 2015 WL 1104813, at *3 (D.N.J. Mar. 11, 2015).

Purdue also cites to *Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726, 731 (8th Cir. 2002), which evaluated whether a party should be able to depose trial counsel. Crucial to that case was the fact that the court found that work-product privilege had been waived. *Id.* at 731-32. Given that there is no finding of waiver here, this case does not support Purdue's suggestion that live depositions of trial counsel are warranted here.

Missing from Purdue's appeal is the actual issue before the Court, namely whether the denial of a request for ***further*** depositions of opposing trial counsel, after written depositions were taken, was "clearly erroneous" or "contrary to law." Purdue cites no law that holds denying further depositions of opposing trial

29

counsel is "clearly erroneous" or "contrary to law," given that Magistrate Judge Bongiovanni used her discretion upon thorough review of the record.  Dkt. No. 351 at 4-5.  Thus, balancing the concerns of privilege and Purdue's need for discovery, the Court exercised its "broad authority to limit discovery and prescribe alternative discovery mechanisms" in ordering deposition by written questions.  *Minter v. Wells Fargo Bank N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009); *Fidelity Mgmt. & Research Co. v. Actuate Corp.*, 275 F.R.D. 63, 64-65 (D. Mass. 2011)(holding that written deposition questions are more appropriate than oral depositions to conduct discovery into facts where oral questioning will leave the Court with a deposition transcript riddled with objections and further motion practice thereafter and the Court can review the written answers and make appropriate ruling on any complaints).  In doing so, Magistrate Judge Bongiovanni ensured that she could oversee the deposition process and address objections and areas of disagreement, as she did when she ordered Depomed's counsel to supplement certain deposition questions.  As such, the written deposition questions were not inferior, but rather the most efficient and effective way to ensure that the parties in this case complied with the Court's order that Purdue's questions were to be "focused" and Depomed's responses were to be meaningful and adequate.  Dkt. No. 351 at 1, 4 and 5[4].

---

[4] Purdue misleadingly cites Judge Cooper's statement regarding "truthful

Ultimately, Magistrate Judge Bongiovanni properly used her discretion to oversee the deposition process, which included reviewing all the questions and answers to ensure that the questions were fair and determining that the responses were sufficient. She made a substantial investment in ensuring the process was fair and sufficient, further supporting her determination that no further depositions was warranted and would not result in additional information.

### 2.   Magistrate Judge Bongiovanni Correctly Concluded That The Circumstances Here Do Not Warrant Additional Live Depositions of Trial Counsel

Magistrate Judge Bongiovanni pointed out the unique circumstances of this case, in which IPR activity was at issue in her Order. She identified that "IPR proceedings are more similar to district court litigation," the "IPR at issue here was instituted by Purdue" and "[i]t was during the IPR proceedings instituted by Purdue that the alleged inequitable conduct occurred." Dkt. No. 351 at 4. Purdue's present litigation counsel handled the IPR proceedings on Purdue's behalf. Walsh Decl., Ex. A (IPR2014-00377 Final Written Decision at 38) (showing Purdue's litigation counsel as Purdue's IPR counsel). Thus, Magistrate Judge Bongiovanni properly balanced Purdue's purported need for in-person

---

statements." Appeal at 21-22. Judge Cooper, however, has made no ruling on whether Ms. Louie-Helm's declaration was truthful or not, and made no ruling on whether written deposition questions are "inferior." *Depomed, Inc. v. Purdue Pharma L.P.*, No. 13-571 (MLC), 2017 WL 2804953, at *6 (D.N.J. June 28, 2017)(citations omitted).

depositions against the substantial risk that Purdue may seek privileged and work product information from trial counsel. *Stepanski*, 2011 WL 8990579, at *18 (the three factors are (i) no other means exist to obtain the information, (ii) the information sought is relevant and non-privileged, and (iii) the information sought is crucial to the preparation of the case).

Purdue's suggestion that the Magistrate Judge should have treated the IPR proceedings just like an *ex parte* reexamination are unavailing. Indeed, Magistrate Judge Bongiovanni identified how the circumstances in this case were very different from *Mondis* involving an *ex parte* reexamination. Dkt. No. 351 at 4; Dkt. No. 346. Consideration must be taken of the circumstances unique to this case, namely that Purdue's inequitable conduct allegations concern activity of trial counsel in the IPR proceedings, as opposed to a patent prosecutor who is seeking to get a patent issued during original patent prosecution. Appeal at 26.

Purdue cannot point to any case where a court ordered depositions of trial counsel under similar circumstances, namely where the inequitable claim is based on statements made by Depomed's IPR counsel who is also litigation trial counsel, and where the IPR petitioner was also represented by litigation counsel. The fact that Purdue filed the IPR proceedings after the litigation was filed is an important fact. Given the existing proceedings, waiver of attorney-client privileged and/or work product information is a significant factor when evaluating whether trial

counsel depositions are even warranted.  *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co*., 276 F.R.D. 376, 382 (D.D.C. 2011).  Indeed, the risk of waiver is particularly high due to the significant overlapping and common issues between the IPR and the litigation.  Thus, as noted in Depomed's briefs to Magistrate Judge Bongiovanni, the Court limited the deposition questions to "focused written questions" to ensure that no privileged information was sought. Dkt. No. 351 at 1, 4.

If Purdue was permitted to take live depositions of Depomed's trial counsel regarding the purported "intent" to deceive the Patent Office, Purdue's attorneys will undoubtedly take advantage of such opportunity to pepper its opposing counsel with questions regarding their legal analyses and beliefs about the prior art, communications with experts, and other attorneys, as well as the attorneys' beliefs about facts in the record.  All of this sought-after information would be privileged and work product that Purdue would attempt to acquire under the guise of seeking discovery into an "intent to deceive."  The deposition transcripts will be littered with repeated objections from Depomed's counsel to avoid waiver of privilege and/or work product, and unlikely to yield relevant or useful information beyond what has already been provided.  *See Fidelity.*, 275 F.R.D. at 64-65 (holding that written deposition questions are more appropriate than oral deposition to conduct discovery into facts where oral questioning will leave the Court with a deposition

33

transcript riddled with objections and further motion practice thereafter and the Court can review the written answers and make appropriate ruling on any complaints).  Accordingly, Magistrate Judge Bongiovanni appropriately considered the parties' positions and found that given the high risk of privilege waiver under these circumstances, allowing depositions by written response was appropriate.

### 3. Purdue's Continued Requests for Additional Deposition of Opposing Trial Counsel Are Made Solely To Harass Deponed and Prolong Resolution of this Litigation

Purdue has not uncovered any new evidence to support its inequitable conduct theory, even after taking substantial discovery on the issue.  This demonstrates the impetus for Purdue's dogged pursuit of such discovery is improper.  When evaluating whether depositions of trial counsel are appropriate, courts require the requesting party to show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  *Shelton v. American Motors*, 805 F.2d 1323, 1327 (8th Cir. 1986).  These safeguards ensure that the harassment of opposing counsel "appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process."  *Id*. at 1330.

Here, Magistrate Judge Bongiovanni ensured that Purdue could not harass

Depomed's trial counsel or attempt to improperly seek privileged and work

production information by requiring the depositions to take place by written

questions instead of a live deposition.   Purdue's repeated requests for live

testimony after having received adequate responses to its requests highlight

Purdue's attempts to harass Depomed and, at the very least, prolong resolution of

the case.

Furthermore, live testimony is not necessary in this case to evaluate the

credibility of Depomed's attorneys.  Since the first litigation involving the Patents-

in-Suit, and throughout this litigation, Depomed, Ms. Louie-Helm and Depomed's

counsel have consistently testified that the conception date is 1996 based on the

following record evidence:

- June 2-3, 1993 – Depomed polymer swelling studies.  *See* Lee Decl., Ex. 8 (DEPO-PURDUE 018265-80).
- June 16, 1993 – June 17, 1993 – Depomed lab notebook pages showing experiments on Captopril formulations containing 40% Captopril / 60% HEC (polymer).  *See id.* (DEPO-PURDUE 018286-88).
- June 29, 1993 – Depomed lab notebook pages showing polymer screening swelling study.  *See id.* (DEPO-PURDUE 018289).
- August 21-24, 1993 – Depomed lab notebook pages showing experiments on Captopril formulations containing 19% Captopril and 20% Captopril to HEC (polymer).  *See id.* (DEPO-PURDUE 018317).
- January 29-February 1, February 12-13, February 23, February 26, 1996 – Depomed lab notebook pages showing experiments on Captopril formulations containing 5.6% Captopril/94.4% polymer and 18.5% Captopril/81.5% polymer.  *See id.*, Ex. 9 (DEPO-PURDUE 018553-62; DEPO-PURDUE 018570-82).

- April 12, 1996 – Depomed lab notebook pages showing experiments on Captopril formulation containing 80% Captopril / 20% PolyOx (the upper end of the claimed drug-to-polymer range) and 18.5% Captopril / 81.5% PolyOx. *See id.*, Ex. 10 (DEPO-PURDUE 018625).

- July 2, 2006 – Depomed served initial responses to IVAX's interrogatories stating erroneously a conception date of June 16, 1993. *See id.*, Ex. 11 at 4 (Depomed's Initial *Ivax* Interrogatory Response).

- January 25, 2007 – Depomed served amended IVAX interrogatory responses, correctly earlier responses to identify a conception date of ***April 12, 1996***. *See id.*, Ex. 12 at 5-6 (Depomed's Amended Ivax Response).

- February 27, 2007 - Ms. Louie-Helm's deposition testimony in the *Ivax* case that the ***April 12, 1996*** date was the correct date for conception (see above). *See id.*, Ex 1 at 183:3-6 (Louis-Helm *Ivax* Tr.).

- June 30, 2010 - Discovery responses served in *Depomed, Inc. v. Lupin* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 3 at 12-13 (Depomed's 6/30/10 discovery responses in *Depomed v. Lupin*).

- December 30, 2011 - Discovery responses served in *Depomed, Inc. v. Lupin* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 4 at 15 (Depomed's 12/30/11 discovery responses in *Depomed v. Lupin*).

- August 16, 2013 – Discovery responses served in *Depomed, Inc. v. Actavis* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 2 at 7 (Depomed's 8/16/13 discovery responses in *Depomed v. Actavis*)

- December 9, 2013 – Discovery responses served in this case (*Depomed v. Purdue*) supporting ***April 12, 1996*** as the conception date. *See id.*, Ex. 6 at 2-3 (Depomed 12/9/13 response to Interrogatory No. 12) (identifying lab notebooks and data supporting conception date).

- March 31, 2014 – Discovery responses served in *Depomed, Inc. v. Endo Pharmaceuticals Inc.* identifying ***April 12, 1996*** as the conception date. *See id.*, Ex. 5 at 11 (Depomed's 3/31/14 discovery responses in *Depomed v. Endo Pharmaceuticals*).

- October 14, 2014 – Patent Owner Response filed; Ms. Louie-Helm IPR Declaration is signed identifying *April 1996* as conception date. *See* Dkt. No. 354-2, Declaration of Liza M. Walsh ("Walsh Decl."), Ex. F (Louie-Helm 10/14/14 Declaration).

- December 14, 2014 – Purdue takes Ms. Louie-Helm's deposition concerning her IPR Declaration.  Questions during the deposition confirmed there was research and development leading up to the *April 12, 1996* conception date.  *See* Lee Decl., Ex. 13 at 31:25-32:15 (Louie-Helm 12/14/2014 IPR Tr.).

- March 19, 2015 – IPR Oral Hearing.  *See* Walsh Decl., Ex. J (3/19/15 Oral Hearing Tr.).

- July 8, 2015 – PTAB confirms validity of all asserted claims.  *See id.*, Ex. C (Final Decision in IPR2014-00379); *id.*, Ex. B (Final Decision in IPR2014-00378); *id.*, Ex. A (Final Decision in the IPR2014-00377).

- March 24, 2016 – Federal Circuit confirms validity of all asserted claims.  *See* Lee Decl., Ex. 14 (Federal Circuit Decision).

- September 27, 2016 – Purdue takes Ms. Louie-Helm's deposition again and ask her questions on the uncorrected July 2, 2006 interrogatory responses from the *Ivax* case regarding the incorrect conception date.  Purdue's attorney does not show her the amended and corrected interrogatory responses dated January 25, 2007.  *See* Walsh Decl., Ex. K (Louie-Helm 9/27/16 Tr. at 211-214 (questioning Ms. Louie-Helm on the inoperative response).

- September 28, 2016 – Supplemental discovery responses served in this case (*Depomed v. Purdue*) supporting *April 12, 1996* as the conception date.  *See* Lee Decl., Ex. 7 at 6-8 (Depomed's 9/28/16 Supplementary Response to Interrogatory No. 12).

Depomed and its trial counsel have satisfactorily complied with its discovery

obligations by producing all relevant information in response to Purdue's requests

to date.  Purdue's repeated and unwarranted requests for live depositions of trial

counsel to purportedly evaluate the "credibility" of Depomed's attorneys is wholly

unnecessary.  The credibility of Depomed's trial counsel cannot be reasonably in

dispute based on the well-supported basis for Depomed's position from the record evidence.

Further, Magistrate Judge Bongiovanni did not abuse her discretion in determining that Purdue could have raised its inequitable conduct allegation earlier in the case.  While Purdue alleges it did not depose Ms. Louie-Helm until after the IPR proceedings concluded, Purdue had the information it alleges support its inequitable conduct claim many months before it instituted the IPR proceedings. Depomed produced the relevant laboratory notebook pages, development documents, and prior discovery responses years before Purdue deposed Ms. Louie-Helm.  Lee Decl., ¶14.

Ultimately, if the Initial Response in the *Ivax* case and laboratory notebooks support its date of conception, it could and should have made those arguments much earlier in the case, when the laboratory notebooks, prior deposition testimony, and relevant written discovery responses in the case regarding conception were produced on August 1, 2013 and September 27, 2013, which was over two years before Purdue filed a motion to amend its Answer to add inequitable conduct claims and before the stay was entered.  Lee Decl., ¶14.

Purdue, nonetheless, waited after the IPR proceedings concluded and its invalidity case was significantly limited by estoppel, to depose Ms. Louie-Helm regarding the inoperative Initial Response from the *Ivax* case, and show her the

Initial Response rather than the corrected Interrogatory Response in order to procure sound bites to manufacture an inequitable conduct allegation.  Thus, Magistrate Judge Bongiovanni correctly concluded that Purdue's improper litigation tactics weighed against granting additional depositions of Depomed's trial counsel.

## C.    Purdue's Alternative Request is Improper

Purdue's request in the alternative to limit or exclude evidence for trial is premised on statements that Depomed never made and is improper.  First, Purdue's alternative request is based on its assertion that Depomed made a "blanket statement" that "that every word of deposition testimony sought by Purdue is privileged."  Depomed never made this blanket statement, but rather stated that Purdue "placed no limits on the scope and topic of the depositions" and therefore "Purdue will undoubtedly ask questions regarding privileged and work product information relevant to the broader IPR proceedings."  Dkt. No. 316 at 7. Accordingly, to the extent Purdue was seeking different information beyond what was provided, Depomed preserved its appropriate objections to ensure that Purdue could not suggest there was some waiver of privilege or other protection.

Second, Purdue's request should be denied because it is premature at this point in the case and patently inequitable.  Purdue does not indicate on what grounds it seeks to exclude evidence, leaving Depomed to speculate as to why it

39

believes it is entitled to such relief.  Any argument that evidence should be excluded as a discovery sanction is groundless because Depomed has complied with its discovery obligations.  *See In re Gabapentin Pat. Litig.*, No. CA 00-CV-2931 FSH, 2011 WL 1807448, at *4 (D.N.J. May 12, 2011) (denying request to exclude evidence for "fail[ing] to address the relevant factors in seeking to exclude evidence as a discovery sanction.").  As noted earlier, Depomed responded to Purdue's written deposition questions.  Magistrate Judge Bongiovanni determined that the answers were meaningful and adequately provided the information requested.  Dkt. No. 351 at 4-5.  Limiting of evidence at trial is an extraordinary relief.  *See Campbell v. Keystone Aerial Surveys, Inc*., 138 F.3d 996, 1004 (5th Cir. 1998) (Evidentiary rule requiring the exclusion of relevant evidence "is an extraordinary measure that should be used sparingly.").  Thus, Purdue is seeking extraordinary relief now for the first time, without any argument what it is alleging.

Limiting the evidence, testimony or arguments that a party can raise at trial is premature at the discovery stage, particularly given the history here and Purdue's refusal to provide Depomed discovery into its claims and decision not to seek all information regarding Depomed's defenses to Purdue's inequitable conduct claims. Accordingly, a motion *in limine* should be made after summary judgment determinations to consider any appropriate limitations and exclusions of evidence in advance of trial.

## IV.   CONCLUSION

Purdue's Motion rests upon a rehash of arguments already considered multiple times by the Magistrate Judge and rejected.  Purdue's insistence on in-person depositions after having received adequate responses to its exhaustive discovery requests is overreaching and harassment.  Purdue cannot show that the Magistrate Judge abused her considerable discretion in denying its request for live depositions of Depomed's trial counsel.  As set forth above, Depomed respectfully requests that the Court affirm the Magistrate Judge's decision.

Respectfully submitted,

DATED:  January 22, 2018           By:  */s/ Keith Miller*
ROBINSON MILLER LLC
Keith Miller
Michael J. Gesualdo
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400

KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
Paul J. Andre
Lisa Kobialka
Hannah Lee
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
Mark Baghdassarian
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

*Attorneys for Plaintiff Depomed, Inc.*

41

## <u>CERTIFICATE OF SERVICE</u>

I, Keith Miller, hereby certify that on January 22, 2018 I caused a true and correct copy of the foregoing document to be served by electronic mail upon the following counsel of record:

Liza M. Walsh
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY
  FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
lwalsh@thewalshfirm.com
eofosuantwi@thewalshfirm.com

Attorneys for Defendants Purdue
Pharma L.P., The P.F. Laboratories,
Inc., and Purdue Pharmaceuticals L.P.

John J. Normile
Kelsey I. Nix
Gasper J. LaRosa
Lisamarie LoGiudice
JONES DAY
250 Vesey Street
New York, NY 10281
jjnormile@jonesday.com
knix@jonesday.com
gjlarosa@jonesday.com
llogiudice@jonesday.com

Co-Counsel for Defendants Purdue
Pharma L.P., The P.F. Laboratories,
Inc., and Purdue Pharmaceuticals L.P.

By:  _/s/ Keith Miller_____
        Keith Miller